Peter S. CARBONE et al., Plaintiffs, Appellees,

v.

Robert W. MESERVE et al., Defendants, Appellants.

No. 80-1754.

United States Court of Appeals, First Circuit.

Argued Feb. 11, 1981.

Decided April 10, 1981.

---

William F. Sheehan, Washington, D. C., with whom Sidney Weinberg, Boston, Mass., Ralph J. Moore, Jr., Patrick M. Hanlon, and Shea & Gardner, Washington, D. C., were on brief, for defendants, appellants.

James F. Freeley, Jr., with whom John E. Sheehy, and Feeney & Freeley, Boston, Mass., were on brief, for plaintiffs, appellees.

Before ALDRICH and WINTER,* Circuit Judges, WYZANSKI,** District Judge.

ALDRICH, Senior Circuit Judge.

On April 6, 1979 the Trustees of Boston and Maine Corporation, Debtor (hereinafter the railroad) withdrew a complement of crew dispatchers then located at the railroad's Mechanicville, New York terminal. These dispatchers had maintained a "spare board," a sheet that listed openings for irregular assignments, and the employees in line for those openings. The withdrawn dispatchers were consolidated with a dispatching crew in East Deerfield, Massachusetts, thus reducing the total number, at a considerable saving. There they produced a Mechanicville spare board, which was reproduced at Mechanicville by a telecopying device known as Rapifax. Most Mechanicville spare board members live in the vicinity, but three WATS lines were also supplied, enabling employees to reach their crew dispatcher in East Deerfield by telephone, toll free, from their homes, or anywhere in New York or New England. Claiming that this changeover constituted a breach of its collective bargaining agreement, and a "major" dispute, the United Transportation Union[1] instituted the present action and, in due course, obtained a preliminary injunction requiring the railroad to reestablish the crew dispatchers at the Mechanicville terminal. In connection with the railroad's appeal we granted its motion for a stay of the injunction. We now reverse, and order the injunction dissolved.

Spare board members are railroad employees who have no regular crew assignments, or who seek work on their days off. Assignments are made on a rotation basis, with employees who have worked most recently being placed at the bottom of the list, to progress upward as assignments are filled, subject to certain seniority rights. If an employee at the top of the list cannot be reached within a reasonable time he is penalized by being taken off the list for 16 hours and then placed at the bottom. Hence it is important for employees to be kept informed at all times. It also appears that mistakes are made, and that employees must be able to make inquiries and see to it, if there are mistakes, that they are corrected.

The basis for this case begins with the railroad's letter of February 11, 1959, writ-

---

* Of the Fourth Circuit, sitting by designation.

** Of the District of Massachusetts, sitting by designation.

1. Plaintiffs are the Chairman, the General Adjustment Committee, and various members. The dispatchers themselves are not members of the union, and are not parties to this action.

ten as the result of a settlement of a "major" dispute,[2] containing the following.

### "ITEM 21

"In disposition of this item, it is understood Crew Dispatchers will not be withdrawn from any terminal where employed as of the date of this letter without consultation in advance with the General Chairman. This will not apply to changes in or discontinuance of individual assignments."

By letter dated November 24, 1970, the parties made a further agreement.

"This refers to the settlement of Item 21 in National Mediation Board Case No. E–172.

"For the future it is understood crew dispatching facilities will not be further merged without prior approval from [the union's General Committee on Adjustment], with the exception of the crew dispatching facilities at Rigby and Westboro, which can be merged at the Carrier's option with the present crew dispatching facilities at Mystic Junction.

"In other words, the crew dispatching facilities on the Boston and Maine property would remain as separate facilities, as follows.

    Mechanicville

    East Deerfield

    Passenger Crew Dispatchers at Boston

    Mystic Junction Crew Dispatchers."

Following the dispatchers' withdrawal on April 6, 1979, the parties being unable to come to terms, the union brought this suit, and on March 5, 1980, at the conclusion of a hearing, the court announced its intention from the bench to grant the injunction.[3] The railroad moved for reconsideration, and that it be allowed to substitute a video spare board to meet certain criticisms that had been advanced against the telecopier. This motion was denied, and in due course the preliminary injunction was entered.

2. National Mediation Board Case No. E–172.

3. The actual order was to be subject to a hearing as to the amount of the bond. The court

■ The initial, and dispositive, question is jurisdictional. The Railway Labor Act, 45 U.S.C. §§ 151 et seq., divides disputes into two classes. A "major" dispute relates to the formation or modification of the collective agreement—"the acquisition of rights for the future," *Elgin, J. & E. Ry. v. Burley*, 1945, 325 U.S. 711, 723, 65 S.Ct. 1282, 1289, 89 L.Ed. 1886—and falls under section 6 of the Act. 45 U.S.C. § 156; *see generally Brotherhood of Railroad Trainmen v. Jacksonville Terminal Co.*, 1969, 394 U.S. 369, 378, 89 S.Ct. 1109, 1115, 22 L.Ed.2d 344. A district court may enjoin either party from altering the status quo during the course of the proceedings, with no showing of irreparable harm. *Detroit & Toledo Shore Line RR. v. United Transportation Union*, 1969, 396 U.S. 142, 90 S.Ct. 294, 24 L.Ed.2d 325; *United Transportation Union v. Burlington Northern, Inc.*, 8 Cir., 1972, 458 F.2d 354, 357.

■ A "minor" dispute, on the other hand, contemplates an existing agreement, and relates "to the meaning or proper application of a particular provision with reference to a specific situation or to an omitted case." *Elgin, J. & E. Ry.*, ante, 325 U.S. at 723, 65 S.Ct. at 1289. Such are entrusted exclusively to arbitration by the National Railroad Adjustment Board at the option of either party, or by system, group or regional board with the consent of both. 45 U.S.C. § 153. No injunction may issue without the traditional showing of irreparable harm. *Order of Railway Conductors v. Pitney*, 1946, 326 U.S. 561, 567, 66 S.Ct. 322, 325, 90 L.Ed. 318; *United Transportation Union v. Burlington Northern, Inc.*, ante, 458 F.2d at 357.

■ The question, accordingly, is whether the withdrawal of the Mechanicville dispatchers was, as the union contends, a "unilateral action ... without any basis in the contract," or, as the railroad asserts, an action warranted by the contract. If it is

subsequently set the admittedly "nominal" figure of $1,000 because of the union's lack of funds. Our stay of the injunction and decision herein moot the railroad's appeal on this issue.

even "arguable" that it was the latter, *see REA Express, Inc. v. Brotherhood of Railway, Airline etc. Employees*, 5 Cir., 1972, 459 F.2d 226, 231, *cert. denied*, 409 U.S. 892, 93 S.Ct. 115, 34 L.Ed.2d 149 it is a "minor" dispute.

"If the railroad took action which it admitted was not in conformity with the existing agreement there would be no question that a 'major dispute' was involved; and the same result necessarily obtains where the railroad's claimed justification is without any reasonable basis in the contract. But we think that, where the railroad asserts a defense based on the terms of the existing collective bargaining agreement, the controversy may not be termed a 'major' dispute unless the claimed defense is so obviously insubstantial as to warrant the inference that it is raised with intent to circumvent the procedures prescribed by § 6 for alteration of existing agreements." *Airlines Stewards & Stewardesses Ass'n v. Caribbean Atlantic Airlines, Inc.*, 1 Cir., 1969, 412 F.2d 289, 291 (citation omitted), quoting *Southern Ry. v. Brotherhood of Locomotive Firemen*, D.C. Cir., 1967, 384 F.2d 323, 327.

The initial difficulty, as it later conceded, was that the court made its March 5 ruling without reference to the *Airlines Stewards* limitation on its power of resolution. The railroad contended that whereas the 1959 agreement spoke in terms of withdrawal of "Crew Dispatchers" while the 1970 agreement referred to the merger of "crew dispatching facilities" and the maintenance of a separate "facility" at Mechanicville, the difference in terms signified a difference in meaning. The court's response, in part, relied on its conclusion that the 1959 agreement's provision for "consultation" (only) was of no value to the union. This, however, was a provision that was bargained for; it was not for the court to assume expertise and declare it worthless.

Although at a later date the court recognized the proper standard, we consider that it continued to violate it when it failed to attribute any consequences to the changes in terminology between the 1959 and the 1970 agreements. It said,

"Put quite simply, there is no longer a 'crew dispatching facility' at Mechanicville since no crew dispatching is done there.... The 'dispatching' is in fact done at East Deerfield...."

We think it at least arguable that the 1970 substitution of "facilities" for "dispatchers" was a liberalization in return for the union's receiving a right of approval rather than, as under the 1959 agreement, of consultation, only, prior to any merger. Furthermore, the record indicates that the union's real concern was ready ("facile") access to information, and not the physical location of the individuals who generated it.

This would be the end of the matter, but for the union's complaint as to the facility's defects. It is true that an operation might be so totally deficient that it could not be described as a facility at all. The union's evidence showed certain inefficiencies and inadequacies in the operation of the Rapifax, and that there were delays and the employees were not always well served by the WATS lines. With respect to the former, the railroad offered to substitute a video device which would keep the information more current, and more legible. The union expressed dissatisfaction, and its position was upheld by the court.

We have two comments. The first is that mere operational defects, as distinguished from deliberate nonfeasance, do not indicate an "intent to circumvent the procedures prescribed by § 6 for alteration of existing agreements." *Airlines Stewards*, ante. The second is that operational defects normally are remediable as time goes on. The union's refusal even to give the railroad an opportunity to make improvements is inconsistent with what we consider to be the entire intendment of the Act, namely, to have matters resolved at the adjustment level if possible. We view the defects in the facility in the same light as we regard the larger·issue, the physical location of the dispatchers. *Accord, United Transportation Union v. Baker*, 7 Cir., 1974, 499 F.2d 727, 731, *cert. denied*, 419 U.S. 839,

95 S.Ct. 69, 42 L.Ed.2d 66, where the court criticized the court in *United Transportation Union v. Penn Central Co.*, 6 Cir., 1971, 443 F.2d 131, *cert. denied*, 404 U.S. 938, 92 S.Ct. 271, 30 L.Ed.2d 251 for making such factual determinations as being contrary to the rule we had embraced in *Airlines Stewards.* Courts should be the last, rather than the first, resort, particularly so if circumventing the Adjustment Board can bring preliminary relief at little attendant risk. *See* n.3, ante.

In sum, there may be a violation of the contract, but this is a question of interpretation, and as such is outside of our jurisdiction. Were it otherwise, "the arbitration machinery mandated by the Railway Labor Act [would] be dealt a crippling blow." *Airlines Stewards*, ante, 412 F.2d at 291.

One other point merits comment. The railroad, by a section 6 notice dated October 6, 1978, placed in mediation the following item (among many).

"Establish a rule for:

Eliminating any rule or agreement which imposes any restriction on consolidation of crew dispatching facilities."

The union contends, and the court found, that this item was withdrawn on August 17, 1979, after removal of the Mechanicville dispatchers.[4] We can see no adverse inference to be drawn from this. Whatever may be the case when the issues are the same, *see United Transportation Union v. Illinois Terminal Ry.*, 7 Cir., 1972, 471 F.2d 375, 377–79, elimination of the rule, and determination of what is permissible thereunder, are two quite different matters. *Cf. Hilbert v. Pennsylvania RR.*, 7 Cir., 1961, 290 F.2d 881, 885, *cert. denied*, 368 U.S. 900, 82 S.Ct. 174, 7 L.Ed.2d 96.

*Reversed and remanded for vacation of the injunction.*

---

4. The railroad disputes this. In fact, we find it irrelevant, but we observe for the future that a matter so easily verifiable as this should have been cleared up well before the case reached us.