March 9, 1993 UNITED STATES COURT OF APPEALS

FOR THE FIRST CIRCUIT

No. 92-1854

RAILWAY LABOR EXECUTIVES' ASSOCIATION, ET AL.,

Plaintiffs, Appellants,

v.

GUILFORD TRANSPORTATION INDUSTRIES, INC., ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Torruella and Cyr, Circuit Judges,

and Keeton,* District Judge.

John O'B. Clarke, Jr., with whom Highsaw, Mahoney & Clarke,

P.C., were on brief for appellants.

Anthony R. Derosby, with whom Charles S. Einsiedler, Jr.,

Julianne Cloutier, Pierce, Atwood, Scribner, Allen, Smith &

Lancaster, Ernest J. Babcock, Mary Ann E. Rousseau, Friedman &

Babcock, John H. Broadley, and Jenner & Block, were on brief for

appellees.

March 9, 1993

* Of the District of Massachusetts, sitting by designation.

TORRUELLA, Circuit Judge. Appellants, Railway Labor

152 (1986). The district court dismissed appellants' complaint
railway labor employees, allege that appellees1 abrogated
Executives' Association and other labor unions representing

appellants' collective bargaining agreements and representation

rights in violation of the Railway Labor Act ("RLA"), 45 U.S.C.

for abuse of market power. 49 U.S.C. 10505(a). Under
10505(a), the transaction is exempt from "the antitrust laws and
from all other law, including [s]tate and municipal law, as

policy of the Interstate Commerce Act ("ICA"), and that the
finds such regulation unnecessary to carry out the transportation

transaction is of limited scope or does not create the potential
Commerce Commission ("ICC") proceedings, we affirm the dismissal
constituted an impermissible collateral attack on Interstate

to craft, under separate agreements. After the acquisition,
In the early 1980's, appellee Guilford acquired two
BACKGROUND

on different grounds than relied upon by the district court.

lines initially belonged to separate unions, organized according
railroad lines and their subsidiaries. The employees of these
on unclear grounds. Because we find that appellants' claim

brought all of the employees within the representation of the

the Maine Central Railroad Company ("Maine Central"), the
Springfield union. The ICC approved these transactions pursuant

carriers. 49 U.S.C. 11343(a). Once the ICC approves these
("Guilford"), Boston and Maine Corporation ("Boston & Maine"),
1 Appellees include Guilford Transportation Industries, Inc.

to 49 U.S.C. 11343(a) (1992).2

Springfield Terminal Railway ("Springfield Terminal").

2 The ICC must approve mergers and consolidations by rail
Portland Terminal Company ("Portland Terminal"), and the
Guilford leased these lines to Springfield, its subsidiary, and

transactions, it may exempt them from other regulation if it
Appellants sought declaratory and injunctive relief in

the United States District Court for the District of Maine,

alleging that appellees executed the leases in order to

streamline appellants' union contracts in violation of the RLA.

The district court dismissed the case for lack of subject matter

jurisdiction, finding that the ICC had exclusive jurisdiction.

See Railway Labor Executives' Ass'n v. Guilford Transp. Indus.

("RLEA I"), 667 F. Supp. 29 (D. Me. 1987), aff'd, 843 F.2d 1383

(1st Cir. 1988), cert. denied, 492 U.S. 905 (1989).

Additionally, the court noted that by approving the lease

transactions, the ICC exempted them from any law that would

impede the transactions pursuant to 49 U.S.C. 10505, and that

according to Brotherhood of Locomotive Eng'rs v. Boston & Maine

Corp., 788 F.2d 794 (1st Cir.), cert. denied, 479 U.S. 829

(1986), "any law" includes the RLA. RLEA I, 667 F. Supp. at 35.

This court affirmed.

Subsequently, the ICC ordered the parties to negotiate,

and if necessary arbitrate, to achieve suitable protection for

employees affected by the lease transactions. The arbitrator

required appellees to honor pre-existing labor agreements, with

several exceptions. On review, the ICC upheld the arbitrator's

decision and held that this relief would not apply retroactively.

It also determined that the affected employees were entitled to

certain limited benefits. An appeal from this order is pending

necessary to let that person carry out the transaction . . . . "
49 U.S.C. 11341(a) (emphasis added).

-3-

before the Circuit Court of Appeals for the District of Columbia.

In 1991, appellants brought the present action in the

district court, again alleging RLA violations. This time,

however, they requested damages arising out of "unauthorized

actions," in contrast to the original action arising out of

actions authorized by the ICC. The district court dismissed the

claim, apparently relying on res judicata and a lack of subject

matter jurisdiction. DISCUSSION
DISCUSSION

I. Res Judicata

It is unclear whether the district court determined

that RLEA I precluded this case in its entirety or if it simply

found that RLEA I barred appellants from relitigating that case's

finding on the scope of the 11341 exemption.3 Thus, we

address both issues.

A. Claim preclusion

The res judicata doctrine provides that "a final

judgment on the merits bars a subsequent suit on the same cause

of action by the same parties and their privies." Walsh v. Int'l

3 The court stated, "RLEA I dismissed the RLA claims on the

grounds that the 11341 exemption 'relieves the participants [in
the exempted transaction] from any legal obstacles that would

impede the transaction. . . .' That ruling is res judicata and

applies in all respects here." Appellants assert that the court
decided that RLEA I precluded them from relitigating the scope of

the 11341 exemption, while appellees argue that the court held
that RLEA I precludes appellants' entire claim.

Technically, res judicata represents claim preclusion, while

collateral estoppel refers to issue preclusion. As evidenced by

this appeal, much confusion arises when courts use the terms
interchangeably.

-4-

Longshoremen's Ass'n, 630 F.2d 864, 870 (1st Cir. 1980).

Superficially, the present case seems to fit within

this test. RLEA I involved the same parties as the present

action. In addition, as the court in RLEA I dismissed the case

for a lack of subject matter jurisdiction, it rendered a final

judgment on the merits. Id. (stating that once a court finds a

lack of subject matter jurisdiction, res judicata bars

relitigation of that issue). However, the present case does not

involve the same cause of action as RLEA I. Although appellants

attack the same lease transactions that were in dispute in RLEA

I, they could not have asserted their present claims in that

action, and thus cannot be precluded by res judicata.

In RLEA I, appellants asked the district court to

prevent actions by appellees that the ICC had authorized; in the

present case, they seek relief based on actions that the ICC

never authorized. When appellees implemented the leases, the ICC

informed them that it would impose labor protective conditions on

the leases in a separate decision. ICC Finance Docket No. 30967,

MEC-Lease, Notice of Exemption at 5-6, served January 23, 1987.

The ICC specifically warned that if appellees proceeded with the

leases and only minimal levels of protection,4 they would do so

at their own risk. ICC Finance Docket No. 31015, B&M-Lease and

Trackage Rights Exemption, Notice of Exemption at 6, served June

4 The protections referred to are called Mendocino Coast

conditions. They arose out of Mendocino Coast Ry., Inc. - Lease

and Operate, 354 I.C.C. 732 (1978), as modified, 360 I.C.C. 653

(1980).

-5-

5, 1987. Appellees continued implementing the leases and

provided only minimal protections, allegedly violating the RLA in

the process. It was not until February 19, 1988, almost a year

after RLEA I, that the ICC decided to require additional labor

protections. Delaware & Hudson Ry. Co. - Lease and Trackage

Rights Exemption - Springfield Terminal Ry. Co., 4 I.C.C.2d 322,

323 (1988). As appellees did not provide these additional

protections until the ICC explicitly required them, their initial

actions were unauthorized. Essentially, appellees gambled that

they would convince the ICC that their actions should be

authorized, and they were unsuccessful.

Appellants could not have asserted their claims based

on the lack of authorization of certain actions by appellees in

RLEA I because they did not know during that litigation which

actions the ICC authorized. Thus, they are not precluded from

asserting these claims now. Car Carriers, Inc. v. Ford Motor

Co., 789 F.2d 589, 593 (7th Cir. 1986) (although mere change in

legal theory does not create a new cause of action, res judicata

will not bar parties from raising issues that they could not have

raised in first litigation); see also United States v. Alky

Enters., 969 F.2d 1039, 1311 (1st Cir. 1992).

B. Issue Preclusion

Appellants do not challenge the district court's

finding of res judicata provided that, by res judicata, the

district court meant issue preclusion with respect to the scope

of the 11341 exemption. As the parties agree on this point of

-6-

law, we need not analyze it further.

II. Relationship with the ICC decision

Having determined that res judicata does not bar this

claim, we now decide whether appellants properly brought suit

before the district court.

Disputes concerning the interpretation or enforcement

of the ICC's labor protective decisions must be resolved by

arbitration or the ICC. Augspurger v. Brotherhood of Locomotive

Eng'rs, 510 F.2d 853, 860 (8th Cir. 1975).

In the present case, the ICC and two arbitrators have

thoroughly examined appellees' actions in implementing the

leases. As a result, the ICC determined that employees of rail

carriers who were adversely affected by the transactions were not

entitled to retroactive relief, but were entitled to certain

benefits. These benefits included a maximum of seventy five days

of make-whole benefits and up to six years of protective period

benefits beginning at the later of the effective date of the

implementing agreement imposing the required conditions and the

date when the adverse effect began. Finance Docket No. 30965

(Sub-Nos. 1 & 2), Delaware & Hudson Ry. Co. Lease and Trackage

Rights Exemption -Springfield Terminal Ry. Co. at 15, served

April 2, 1992. Appellants were unable to persuade the ICC that

further labor protection could be reconciled with the essential

purposes of the leases. If appellants disagree with the ICC

determinations, their recourse is through appeal. Indeed, their

appeal of the ruling is currently pending before another circuit

-7-

court.

By asking the district court to make independent

findings regarding the extent of labor protection which can be

reconciled with the disputed leases, they are initiating an

impermissible collateral attack upon the ICC's decisions, see

Boston & Maine Corp., 788 F.2d at 799, and risking the

possibility of inconsistent judgments between this court and the

Court of Appeals for the District of Columbia. We cannot

countenance such a situation. Thus, we affirm the district

court's dismissal of the claim albeit on different grounds.5

Affirmed.

5 The district court apparently based its dismissal on the
ground that the ICC, not the district court, should determine
whether an exemption from the RLA is necessary to carry out the
lease transactions as required by 11341. Since we affirm the
district court's dismissal on the ground that the claim posed a
collateral attack on an ICC determination, we need not reach this
issue.

-8-