**RAILWAY LABOR EXECUTIVES' ASSOCIATION, et al., Plaintiffs, Appellants,**

v.

**GUILFORD TRANSPORTATION INDUSTRIES, INC., et al., Defendants, Appellees.**

**No. 92–1854.**

United States Court of Appeals, First Circuit.

Heard Dec. 9, 1992.

Decided March 9, 1993.

Order Denying Rehearing and Rehearing En Banc April 7, 1993.

John O'B. Clarke, Jr., with whom Highsaw, Mahoney & Clarke, P.C., Washington, DC, were on brief, for plaintiffs, appellants.

Anthony R. Derosby, with whom Charles S. Einsiedler, Jr., Julianne Cloutier, Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Ernest J. Babcock, Mary Ann E. Rousseau, Friedman & Babcock, Portland, ME, John H. Broadley, and Jenner & Block, Washington, DC, were on brief, for defendants, appellees.

Before TORRUELLA and CYR, Circuit Judges, and KEETON,[*] District Judge.

TORRUELLA, Circuit Judge.

Appellants, Railway Labor Executives' Association and other labor unions representing railway labor employees, allege that appellees[1] abrogated appellants' collective bargaining agreements and representation rights in violation of the Railway Labor Act ("RLA"), 45 U.S.C. § 152 (1986). The district court dismissed appellants' complaint on unclear grounds. Because we find that appellants' claim constituted an impermissible collateral attack on Interstate Commerce Commission ("ICC") proceedings, we affirm the dismissal on different grounds than relied upon by the district court.

## BACKGROUND

In the early 1980's, appellee Guilford acquired two railroad lines and their subsidiaries. The employees of these lines initially belonged to separate unions, organized according to craft, under separate agreements. After the acquisition, Guilford leased these lines to Springfield, its subsidiary, and brought all of the employees within the representation of the Springfield union. The ICC approved these transactions pursuant to 49 U.S.C. § 11343(a) (1992).[2]

Appellants sought declaratory and injunctive relief in the United States District Court for the District of Maine, alleging that appellees executed the leases in order to streamline appellants' union contracts in violation of the RLA. The district court dismissed the case for lack of subject matter jurisdiction, finding that the ICC had

---

[*] Of the District of Massachusetts, sitting by designation.

[1] Appellees include Guilford Transportation Industries, Inc. ("Guilford"), Boston and Maine Corporation ("Boston & Maine"), the Maine Central Railroad Company ("Maine Central"), the Portland Terminal Company ("Portland Terminal"), and the Springfield Terminal Railway ("Springfield Terminal").

[2] The ICC must approve mergers and consolidations by rail carriers. 49 U.S.C. § 11343(a). Once the ICC approves these transactions, it may exempt them from other regulation if it finds such regulation unnecessary to carry out the transportation policy of the Interstate Commerce Act ("ICA"), and that the transaction is of limited scope or does not create the potential for abuse of market power. 49 U.S.C. § 10505(a). Under § 10505(a), the transaction is exempt from "the antitrust laws and *from all other law*, including [s]tate and municipal law, as necessary to let that person carry out the transaction...." 49 U.S.C. § 11341(a) (emphasis added).

exclusive jurisdiction. *See Railway Labor Executives' Ass'n v. Guilford Transp. Indus. ("RLEA I")*, 667 F.Supp. 29 (D.Me. 1987), *aff'd*, 843 F.2d 1383 (1st Cir.1988), *cert. denied*, 492 U.S. 905, 109 S.Ct. 3213, 106 L.Ed.2d 564 (1989). Additionally, the court noted that by approving the lease transactions, the ICC exempted them from *any law* that would impede the transactions pursuant to 49 U.S.C. § 10505, and that according to *Brotherhood of Locomotive Eng'rs v. Boston & Maine Corp.*, 788 F.2d 794 (1st Cir.), *cert. denied*, 479 U.S. 829, 107 S.Ct. 111, 93 L.Ed.2d 59 (1986), "any law" includes the RLA. *RLEA I*, 667 F.Supp. at 35. This court affirmed.

Subsequently, the ICC ordered the parties to negotiate, and if necessary arbitrate, to achieve suitable protection for employees affected by the lease transactions. The arbitrator required appellees to honor preexisting labor agreements, with several exceptions. On review, the ICC upheld the arbitrator's decision and held that this relief would not apply retroactively. It also determined that the affected employees were entitled to certain limited benefits. An appeal from this order is pending before the Circuit Court of Appeals for the District of Columbia.

In 1991, appellants brought the present action in the district court, again alleging RLA violations. This time, however, they requested damages arising out of "unauthorized actions," in contrast to the original action arising out of actions authorized by the ICC. The district court dismissed the claim, apparently relying on *res judicata* and a lack of subject matter jurisdiction.

## DISCUSSION

### I. *Res Judicata*

It is unclear whether the district court determined that *RLEA I* precluded this case in its entirety or if it simply found that *RLEA I* barred appellants from relitigating that case's finding on the scope of the § 11341 exemption.[3] Thus, we address both issues.

### A. Claim preclusion

■ The *res judicata* doctrine provides that "a final judgment on the merits bars a subsequent suit on the same cause of action by the same parties and their privies." *Walsh v. Int'l Longshoremen's Ass'n*, 630 F.2d 864, 870 (1st Cir.1980).

■ Superficially, the present case seems to fit within this test. *RLEA I* involved the same parties as the present action. In addition, as the court in *RLEA I* dismissed the case for a lack of subject matter jurisdiction, it rendered a final judgment on the merits. *Id.* (stating that once a court finds a lack of subject matter jurisdiction, *res judicata* bars relitigation of that issue).

However, the present case does not involve the same cause of action as *RLEA I*. Although appellants attack the same lease transactions that were in dispute in *RLEA I*, they could not have asserted their present claims in that action, and thus cannot be precluded by *res judicata*.

In *RLEA I*, appellants asked the district court to prevent actions by appellees that the ICC had authorized; in the present case, they seek relief based on actions that the ICC never authorized. When appellees implemented the leases, the ICC informed them that it would impose labor protective conditions on the leases in a separate decision. ICC Finance Docket No. 30967, MEC–Lease, Notice of Exemption at 5–6, served January 23, 1987. The ICC specifically warned that if appellees proceeded with the leases and only minimal levels of

---

**3.** The court stated, "*RLEA I* dismissed the RLA claims on the grounds that the § 11341 exemption 'relieves the participants [in the exempted transaction] from *any* legal obstacles that would impede the transaction....' That ruling is *res judicata* and applies in all respects here." Appellants assert that the court decided that *RLEA I* precluded them from relitigating the scope of

the § 11341 exemption, while appellees argue that the court held that *RLEA I* precludes appellants' entire claim.

Technically, *res judicata* represents claim preclusion, while *collateral estoppel* refers to issue preclusion. As evidenced by this appeal, much confusion arises when courts use the terms interchangeably.

protection,[4] they would do so at their own risk. ICC Finance Docket No. 31015, B & M–Lease and Trackage Rights Exemption, Notice of Exemption at 6, served June 5, 1987. Appellees continued implementing the leases and provided only minimal protections, allegedly violating the RLA in the process. It was not until February 19, 1988, almost a year after *RLEA I*, that the ICC decided to require additional labor protections. *Delaware & Hudson Ry. Co.— Lease and Trackage Rights Exemption— Springfield Terminal Ry. Co.,* 4 I.C.C.2d 322, 323 (1988). As appellees did not provide these additional protections until the ICC explicitly required them, their initial actions were unauthorized. Essentially, appellees gambled that they would convince the ICC that their actions should be authorized, and they were unsuccessful.

Appellants could not have asserted their claims based on the lack of authorization of certain actions by appellees in *RLEA I* because they did not know during that litigation which actions the ICC authorized. Thus, they are not precluded from asserting these claims now. *Car Carriers, Inc. v. Ford Motor Co.,* 789 F.2d 589, 593 (7th Cir.1986) (although mere change in legal theory does not create a new cause of action, *res judicata* will not bar parties from raising issues that they could not have raised in first litigation); *see also United States v. Alky Enters.,* 969 F.2d 1309, 1311 (1st Cir.1992).

### B. Issue preclusion

Appellants do not challenge the district court's finding of *res judicata* provided that, by *res judicata,* the district court meant issue preclusion with respect to the scope of the § 11341 exemption. As the parties agree on this point of law, we need not analyze it further.

### II. *Relationship with the ICC decision*

Having determined that *res judicata* does not bar this claim, we now decide whether appellants properly brought suit before the district court.

■ Disputes concerning the interpretation or enforcement of the ICC's labor protective decisions must be resolved by arbitration or the ICC. *Augspurger v. Brotherhood of Locomotive Eng'rs,* 510 F.2d 853, 860 (8th Cir.1975).

■ In the present case, the ICC and two arbitrators have thoroughly examined appellees' actions in implementing the leases. As a result, the ICC determined that employees of rail carriers who were adversely affected by the transactions were not entitled to retroactive relief, but were entitled to certain benefits. These benefits included a maximum of seventy five days of make-whole benefits and up to six years of protective period benefits beginning at the later of the effective date of the implementing agreement imposing the required conditions and the date when the adverse effect began. Finance Docket No. 30965 (Sub–Nos. 1 & 2), Delaware & Hudson Ry. Co. Lease and Trackage Rights Exemption—Springfield Terminal Ry. Co. at 15, served April 2, 1992. Appellants were unable to persuade the ICC that further labor protection could be reconciled with the essential purposes of the leases. If appellants disagree with the ICC determinations, their recourse is through appeal. Indeed, their appeal of the ruling is currently pending before another circuit court.

By asking the district court to make independent findings regarding the extent of labor protection which can be reconciled with the disputed leases, they are initiating an impermissible collateral attack upon the ICC's decisions, *see Boston & Maine Corp.,* 788 F.2d at 799, and risking the possibility of inconsistent judgments between this court and the Court of Appeals for the District of Columbia. We cannot countenance such a situation. Thus, we affirm the district court's dismissal of the

---

**4.** The protections referred to are called *Mendocino Coast* conditions. They arose out of *Men-* *docino Coast Ry., Inc.—Lease and Operate,* 354

claim albeit on different grounds.[5]

*Affirmed.*

Before BREYER, Chief Judge, TORRUELLA, SELYA, CYR,* STAHL, Circuit Judges, and KEETON,** District Judge.

## ORDER OF COURT ON PETITION FOR REHEARING

April 7, 1993.

The panel of judges that rendered the decision in this case having voted to deny the petition for rehearing and the suggestion for the holding of a rehearing en banc having been carefully considered by the judges of the court in regular active service and a majority of said judges not having voted to order that the appeal be heard or reheard by the Court en banc,

It is ordered that the petition for rehearing and the suggestion for rehearing en banc be denied.

I.C.C. 732 (1978), *as modified,* 360 I.C.C. 653 (1980).

**5.** The district court apparently based its dismissal on the ground that the ICC, not the district court, should determine whether an exemption from the RLA is necessary to carry out the lease transactions as required by § 11341. Since we affirm the district court's dismissal on the ground that the claim posed a collateral attack on an ICC determination, we need not reach this issue.

* Judge Michael Boudin recused himself.

** Of the District of Massachusetts, sitting by designation.