RAILWAY LABOR EXECUTIVES' ASSOCIATION, et al., Plaintiffs,

v.

GUILFORD TRANSPORTATION INDUSTRIES, INC., Boston and Maine Corporation, Delaware & Hudson Railway Company, Maine Central Railroad Company, Portland Terminal Company, and Springfield Terminal Company, Defendants.

Civil No. 87–0034–P.

United States District Court, D. Maine.

July 27, 1987.

John O'B. Clarke, Jr., Washington, D.C., Craig J. Rancourt, Biddeford, Me., for plaintiffs.

Charles S. Einsiedler, Jr., Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, Me., for Boston & Maine Corp., MCRR, Portland Terminal Co., Delaware & Hudson & Springfield Terminal Co.

Ralph J. Moore, Jr., Scott R. McIntosh, D. Eugenia Langan, Shea & Gardner, Washington, D.C., for defendants.

James E. Howard, Warren D. Hutchison, Kirkpatrick & Lockhart, Boston, Mass., Jay S. Blumenkopf, Drummond, Woodsum, Plimpton & MacMahon, P.A., Portland, Me., for Guilford Transp.

## MEMORANDUM OF DECISION AND ORDER

GENE CARTER, District Judge.

Currently before the Court are the following motions: Plaintiffs' Motion for Reconsideration of the Court's Order of January 30, 1987; Defendants' Motions to Dismiss Complaint;[1] and Plaintiffs' Motion for Interlocutory Injunctive Relief. For the reasons discussed fully below, the Court finds that it lacks jurisdiction and dismisses the action.

Plaintiffs Railway Labor Executives' Association[2] have brought this action for declaratory judgment and injunctive relief against Defendants Guilford Transportation Industries, Inc. (Guilford), Boston and Maine Corporation (B & M), Delaware & Hudson Railway Company (D & H), Maine Central Railroad Company (MEC), Portland Terminal Company (PT), and Springfield Terminal Company (ST) in response to the pending implementation of a number of leases among the various Defendants.[3]

Plaintiffs allege that the present pattern of intracorporate leases is just yet another step in Defendants' "systematic and deliberate plan to effect without bargaining the changes in rules and working conditions" which Defendants have heretofore failed to accomplish within the statutory requirements of the Railway Labor Act. Plaintiffs' Complaint for Declaratory Judgment and Injunctive Relief ¶ 13, at 5. *See Railway Labor Executives' Ass'n v. Boston & Maine Corp.*, 664 F.Supp. 605, 607 n. 3 (D.Me.1987) (citing cases detailing history of labor dispute between parties). Count I alleges that Defendants are or will be in violation of a 1982 order of the Interstate Commerce Commission (ICC), Finance Docket No. 29720 (Sub-No. 1), by implementing the leases. Count II alleges that Defendants have willfully and deliberately violated various sections of the Railway Labor Act, 45 U.S.C. §§ 151–163 (1982). Plaintiffs allege that the Court has jurisdiction under 28 U.S.C. §§ 1331, 1336(a), and 1337(a), and under 49 U.S.C. § 11705.

I.

The underlying facts are not, at this juncture, complex. In 1982, Guilford,

1. All Defendants have joined in a Motion to Dismiss for lack of subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1), (6). Defendant Guilford Transportation Industries, Inc. (Guilford) has also filed a separate motion to dismiss. In its separate motion, Guilford argues that if the Court retains jurisdiction over the action, Guilford is not a proper party. Due to the Court's disposition of the action on jurisdictional grounds, the Court does not reach the issue raised in Guilford's separate motion.

2. Plaintiffs include the Railway Labor Executives' Association, the International Federation of Professional and Technical Engineers, and the following 14 member organizations of the Association: American Railway and Airway Supervisors Association (Division of BRAC); American Train Dispatchers Association; Brotherhood of Locomotive Engineers; Brotherhood of Maintenance of Way Employes; Brotherhood of Railroad Signalmen; Brotherhood of Railway, Airline and Steamship Clerks, Freight Han-

dlers, Express and Station Employes; Brotherhood Railway Carmen (Division of BRAC); International Association of Machinists and Aerospace Workers; International Brotherhood of Boilermakers and Blacksmiths, Iron Ship Builders, Blacksmiths, Forgers and Helpers; International Brotherhood of Electrical Workers; International Brotherhood of Firemen and Oilers; Railroad Yardmasters of America (Division of UTU); Sheet Metal Workers' International Association; and United Transportation Union.

3. The leases challenged by this action include: leases between B & M and ST, Finance Docket Nos. 30791, 30925,* 30951,* 30955, 30966,* 30981,* 30993,* 31003, 31015; leases between MEC and ST, Finance Docket Nos. 30967,* 31002,* 31023; and leases between D & H and ST, Finance Docket Nos. 30965, 30972, 31003. The seven docket numbers marked with an asterisk represent leases that have been implemented.

which already owned MEC and its subsidiary PT, obtained the approval of the ICC under section 11343 of the Interstate Commerce Act, 49 U.S.C. § 11343 (1982) (the Act), to acquire control of both D & H and B & M, including B & M's subsidiary ST. *See* ICC Finance Docket Nos. 29720 (Sub-No. 1) and 29772 (the 1982 orders). These acquisitions resulted in the corporate affiliation of the Defendants now before the Court. As part of its approval, the ICC imposed arrangements for the protection of employee interests known as the *New York Dock*[4] conditions.

Subsequent to the above acquisitions, Guilford sought and received notices of exemption by the ICC under section 10505 of the Act, 49 U.S.C. § 10505, which allow Guilford to implement the leases challenged by this action. *See, e.g.,* Finance Docket Nos. 30965, 30967. On December 30, 1986, MEC served a notice of the proposed lease transaction on the affected unions; the next day, Plaintiffs filed petitions with the ICC under the relevant dockets requesting that the ICC determine that the appropriate employee protective provisions are the *New York Dock* conditions imposed in the 1982 orders and not the *Mendocino Coast*[5] conditions usually imposed on exempt lease transactions. On January 14, 1987, the ICC released its decision acknowledging Plaintiffs' petitions and indicating that it would issue a subsequent decision on the issue raised therein. Finance Docket No. 30967. The parties still await the ICC's decision.[6] In the interim, Defendants are apparently required to adhere to the *Mendocino Coast* conditions in the implementation of the MEC leases.

Plaintiff filed the present case in this Court on January 28, 1987; they sought a temporary restraining order on January 29, just two days prior to the February 1st effective date of the challenged MEC lease. On January 30th, the Court denied the motion for temporary relief and dismissed Count I of the Complaint for lack of subject matter jurisdiction or, in the alternative, declined jurisdiction as to Count I because the issue fell within the primary jurisdiction of the ICC. *Railway Labor Executives' Ass'n v. Guilford Transp. Indus.*, 653 F.Supp. 643, 645 (D.Me.1987). The Court turns now to the arguments presented by the parties with respect to each count of the Complaint.

## II. *Count I*

In seeking reconsideration of the Court's prior order, which dismissed Count I, Plaintiffs advance three separate requests. First, Plaintiffs ask the Court to retain jurisdiction of Count I. Second, Plaintiffs renew their request for injunctive relief pending the outcome of the ICC petitions. Finally, Plaintiffs ask that the Court stay further proceedings on Count I, including any referral of the determinative factual question to the ICC, until the ICC rules on Plaintiffs' petitions in the lease cases.

### A. *Jurisdiction*

■ In pressing their original request for temporary relief, Plaintiffs did not address with specificity the issue of the Court's jurisdiction, nor did Defendants raise the issue in the brief time available for a response; neither party mentioned the doctrine of primary jurisdiction. Because Count I sought enforcement of the

---

**4.** The *New York Dock* conditions were developed in *New York Dock Ry.—Control—Brooklyn Eastern Dist.*, 360 I.C.C. 60 (1979). These conditions are important to Plaintiffs because they require that employees affected by any transaction receive at least 90 days advance notice and that an implementing agreement be negotiated between all parties to the transaction before the transaction is consummated.

**5.** *Mendocino Coast* conditions were developed in *Mendocino Coast Ry., Inc.—Lease and Operate*, 354 I.C.C. 732 (1978), *as modified at* 360 I.C.C. 653 (1980), *aff'd sub nom. Railway Labor Executives' Ass'n v. United States*, 675 F.2d 1248

(1982). Under *Mendocino Coast,* employees affected by a transaction receive 20 days advance notice, and the transaction may be consummated before an implementing agreement is negotiated between the lessee and lessor railroads and the affected labor interests.

**6.** On May 12, 1987, the ICC released another decision which also deferred resolution of the employee protection issue pending the receipt of additional evidence and further investigation. Finance Docket No. 30965 (also encompassing Finance Docket Nos. 30967, 30972, 30981, 30993, 31002, 31003).

1982 orders,[7] the Court determined that Plaintiffs' right to relief depended on the resolution of the following factual question within the primary jurisdiction of the ICC: whether the challenged lease transactions fall within the scope of the 1982 orders. Because the question was pending before the agency, the Court also determined that it lacked subject matter jurisdiction. *Id.* Plaintiffs now expressly argue that under section 11705(a) of the Act[8] the Court has jurisdiction to enforce the 1982 orders and should retain jurisdiction while the ICC determines the above-stated predicate factual issue, a determination which Plaintiffs concede is within the primary jurisdiction of the ICC. Defendants counter that the Court's dismissal of the action is appropriate under the guidelines articulated in *Far East Conference v. United States,* 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576 (1952). Having now had the benefit of full briefing on the issue, particularly Plaintiffs' position regarding the referral option, the Court determines that no purpose would be served by retaining jurisdiction and therefore reaffirms its prior dismissal of Count I, clarifying any ambiguity that may have arisen from its prior discussion of referral.

The Court's reasoning rests on the unique relationship between the case pending before it and the several petitions pending before the ICC. Plaintiffs made an initial strategic choice to pursue their challenges to the present leases in the context of the exemption notices before the ICC.

The alternative would have been to initiate an enforcement action of the 1982 orders, either by filing an action in this Court under section 11705(a) or by seeking a declaratory order from the ICC under section 11701, 49 U.S.C. § 11701(b). Plaintiffs chose to proceed in the exemption context because they perceived that their petitions would afford them the most immediate relief.[9] In their petitions before the ICC, Plaintiffs expressly raised the argument that the leases are transactions within the meaning of the 1982 orders. *See, e.g.,* Finance Docket No. 30967, 52 Fed.Reg. 2625 (1987). When, however, the ICC deferred its decision as to whether "the *New York Dock* conditions should also apply to this lease transaction, because it is allegedly just another transaction to further the control benefits attributable to the original acquisition of MEC by [Guilford]"), *id.,* Plaintiffs raised the same issue in the present enforcement action in this Court.

In issuing the January 30 Order, the Court expressed its concerns about ruling on an issue currently pending before the ICC. One concern is, of course, that the ICC action may moot the issue before this Court. This possibility may, however, be easily addressed by the Court staying any action until the ICC rules. Nevertheless, another concern counterbalances the wisdom of issuing a stay: if Plaintiffs have a right to have their claim resolved by this Court, the Court should not avoid its duty to render the appropriate relief. This con-

---

**7.** The enforcement powers of the Court derive from section 11705 of the Interstate Commerce Act, which provides in part:

(a) A person injured because a carrier providing transportation or service subject to the jurisdiction of the Interstate Commerce Commission under chapter 105 of this title does not obey an order of the Commission, except an order for the payment of money, may bring a civil action to enforce that order under this subsection.

. . . .

(b)(2) A common carrier providing transportation subject to the jurisdiction of the Commission under subchapter I or III of chapter 105 of this title is liable for damages sustained by a person as a result of an act or omission of that carrier in violation of this subtitle.

. . . .

(c)(1) A person may file a complaint with the Commission under section 11701(b) of this title or bring a civil action under subsection (b)(1) or (2) of this section to enforce liability against a common carrier providing transportation subject to the jurisdiction of the Commission under subchapter I or III of chapter 105 of this title. . . .

49 U.S.C. § 11705(a), (b)(2), (c)(1) (1982).

**8.** *See supra* note 7.

**9.** *See* Plaintiffs' Memorandum in Support of Motion for Reconsideration at 7: "[I]f the Commission did not impose the *New York Dock* conditions in the lease cases, the notice and negotiation protections [provided by *New York Dock*] would be lost while the applicability of those conditions to the lease transactions was litigated."

cern may counsel immediate referral to the ICC of the determinative factual question, directing the ICC to address the issue and thus preserving Plaintiffs' rights.[10] But as the briefing has expanded in this case, it is now apparent that the Court's initial concern about its jurisdiction provides the most significant justification for allowing the ICC to act first on all issues.

By bringing an enforcement action in this Court while the same issue is pending before the ICC in actions involving essentially the same relief, it appears to the Court that Plaintiffs have made a creative attempt to avoid the requirement of section 11705 that they make an election between the forums provided by the ICC and by this Court. *See, e.g., Louisville & N.R.R. v. Ohio Valley Tie Co.*, 242 U.S. 288, 291, 37 S.Ct. 120, 122, 61 L.Ed. 305 (1916) (requiring claimant to elect between a complaint to the Commission and a civil action; decided under former 49 U.S.C. § 9). Plaintiffs' reluctance to have the issue referred to the ICC for determination highlights the problems created by their attempt to have both forums remain the forum of first instance.

Plaintiffs have requested that the Court, if it were to retain jurisdiction, "not refer [the determinative] issue to the ICC at this time." Plaintiffs' Memorandum in Support of Motion for Reconsideration at 7. Plaintiffs' request rises from their desire to avoid jurisdictional conflicts between this Court and the court of appeals, for this Court would retain jurisdiction over the referred question while the court of appeals would have jurisdiction over any results flowing from the petitions before the ICC. 28 U.S.C. §§ 1336(b), 2321(a), and 2341.[11] In the Court's view, it is precisely this type of conflict that is avoided by the election requirement of section 11705. Having initiated their fight before the ICC, Plaintiffs cannot in fairness avoid having the ICC remain the battlefield for all other initial skirmishes. If, as a result of the Court's dismissal of Count I, Plaintiffs are required to bring an original action before the ICC, the potential jurisdictional conflicts may be avoided, and Plaintiffs will have an opportunity to have their rights fully vindicated. Thus, even if the statute did not require an election between forums, the avoidance of forum shopping and the difficulties that overlapping forums present in light of the overall statutory scheme justify dismissal in this case. *See Montgomery Environmental Coalition v. Washington Suburban Sanitary Comm'n*, 607 F.2d 378, 382–83 (D.C.Cir. 1979) (finding dismissal proper where retention of jurisdiction by district court would conflict with appellate review of action by EPA).

Finally, even if the duplicity of forums were not determinative of the issue, Plaintiffs have not demonstrated that dismissal would be improper. In deciding whether to stay the action pending referral or to dismiss, the Court must determine whether dismissal will prejudice any party. *United States v. Michigan Nat'l Corp.*, 419 U.S. 1, 4–5, 95 S.Ct. 10, 11–12, 42 L.Ed.2d 1 (1974); *Far East Conf.*, 342 U.S. at 577, 72 S.Ct. at

**10.** It is possible that the ICC may resolve the issues pending before it without reaching the factual question presented by Count I. The Court notes that in a recent unpublished opinion, the ICC indicated that it was deferring the resolution of the appropriate level of employee protection for the challenged leases both in light of the status of these transactions under the 1982 orders and in light of independent factual issues such as the number of similar leases which exist in the Guilford corporate structure, whether these leases have a cumulative effect different from that which usually occurs in lease transactions, whether Guilford plans to initiate other leases in the near future, and the impact of the leases on Defendants' employees including a consideration of the manner in which Guilford is implementing the leases. Fi-

nance Docket No. 30965 (May 12, 1987), Plaintiffs' App. C.

**11.** Plaintiffs have also argued, however, that if the ICC decides, in the context of the pending petitions, that the challenged leases fall within the 1982 orders, Plaintiffs will ask the Court to enforce the 1982 orders on the basis of the new decision. In effect, Plaintiffs would have an enforcement action pending in this Court while the determinative questions are being resolved in a separate action before the ICC. It appears to the Court, however, that any enforcement action would flow from the new ICC orders. Although this issue is not squarely before the Court at this juncture, it does highlight the difficulties raised by the Plaintiffs' invocation of multiple forums.

495. Plaintiffs advance two arguments in support of the Court's continued jurisdiction: one, Plaintiffs' concurrent request for injunctive relief bars dismissal; and two, Count I is inextricably tied to Count II. The Court addresses each in turn.

### B. *Request for Injunctive Relief*

Plaintiffs' first argument is curious for Plaintiffs do not argue that they could not receive the same injunctive relief in an action before the ICC. More importantly, it appears from the record that Plaintiffs have requested this relief from the ICC in at least some of their petitions in the lease exemption notices. *E.g.*, Finance Docket No. 30965, at 2 n. 2 (May 12, 1987). The ICC has specifically rejected Plaintiffs' argument that they would be irreparably harmed if the lease transactions were consummated before the issue of employee protection conditions is decided. The ICC noted that even under the *Mendocino Coast* conditions, employees have a complete remedy at law to be "made whole" if the implementations proceed before the implementing agreements are negotiated. *Id.* Having had this issue resolved against them in the administrative context, Plaintiffs may not now come to this Court and argue that jurisdiction must be retained so that they might ask the Court for identical relief.

### C. *The Relationship of Count I to Count II*

Plaintiffs' second argument centers on their allegation that some unspecified prejudice may result from the dismissal of Count I while Count II is pending before the Court. Because the Court finds, *see infra* Part III, that it also lacks jurisdiction over Count II, Plaintiffs' argument must fail on this ground.

The parties have not raised any additional claim of prejudice. Since it does not appear to the Court that there is any impediment to the Plaintiffs' initiating before the ICC the request for relief encompassed by Count I, if Plaintiffs have not already done so in their pending petitions, the Court finds that dismissal for want of jurisdiction is proper.

### III. *Count II*

■ In Count II of their Complaint, Plaintiffs allege that Defendants have violated various sections of the Railway Labor Act (RLA) by implementing the challenged leases. The allegation rests on three grounds: one, because the leases affect existing rates of pay, rules and working conditions, Defendants must bargain with Plaintiffs over these changes within the procedures provided by the RLA; two, in various agreements among the parties, Defendants have bargained away their right to lease their properties[12]; and three, Defendants have interfered with the rights of their employees to be represented by the labor organization of the employees' choice by communicating directly with their employees regarding the employment options under the leases.

Defendants argue that, regardless of whether Plaintiffs' allegations state a claim under the RLA, any RLA claim is preempted by the exemption found in section 11341(a) of the Act, 49 U.S.C. § 11341(a).[13]

---

12. Paragraph 30 of the Plaintiffs' Complaint alleges that various agreements and practices between the parties prohibit Defendants from transferring work which is being performed by their employees to others without prior notice and negotiation. Because the motion before the Court is a motion to dismiss, the Court is required to construe the Complaint in the light most favorable to Plaintiffs, *see* 5 C. Wright & A. Miller, *Federal Practice & Procedure* § 1357, at 594 (1969), and therefore construes the above allegation as encompassing the argument advanced by Plaintiffs. By construing the Complaint liberally in favor of Plaintiffs, the Court does not imply any position regarding whether this construction of the allegation is supported by the as yet undeveloped facts of this case.

13. Section 11341 provides in pertinent part:
The authority of the Interstate Commerce Commission under this subchapter is exclusive. A carrier or corporation participating in or resulting from a transaction approved by or exempted by the Commission under this subchapter may carry out the transaction, own and operate property, and exercise control or franchises acquired through the transaction without the approval of a State authority. A carrier, corporation, or person participating in that approved or exempted transaction is exempt from the antitrust laws and from all other law, including State and municipal law, as necessary to let that person carry out the transaction, hold, maintain, and operate property, and exercise control or

Plaintiffs have countered Defendant's argument by presenting the Court with a comprehensive analysis of the controlling statutory provisions and their legislative history. Were the Court writing on a clean slate, Plaintiffs' arguments would need to be commented upon in depth. Here, however, the Court finds that its decision is controlled by *Brotherhood of Locomotive Engineers v. Boston & Maine Corp.,* 788 F.2d 794 (1st Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 111, 93 L.Ed.2d 59 (1986).

In *Boston & Maine,* the First Circuit considered whether section 11341 of the Act precluded a party who was adversely affected by the implementation of a section 10505–exempted lease from pursuing claims that would otherwise fall within the jurisdiction of the federal courts under the RLA. *Id.* at 796–99. The Circuit held that the exemption provided by section 11341 relieves the participants from *any* legal obstacles that would impede the transaction. *Id.* at 800.

Plaintiffs have attempted to distinguish their claims from the *Boston & Maine* case by emphasizing the following three sets of facts: one, that in *Boston & Maine,* the ICC had specifically considered the effect of the lease on the parties' rights in the underlying exemption proceeding, where here Plaintiffs have raised these issues before the Court; two, the present case includes an allegation that Defendants had no right to enter the leases; and three, even under the section 11341 exemption, Defendants have no right to deal directly with their employees regarding the ICC-imposed employee protection conditions. The Court, however, finds *Boston & Maine* to be equally applicable to the present case and thus controlling precedent.

First, in formulating the relevant employee protection conditions to be applied to the challenged leases, the ICC is currently contemplating the effect of the leases on the collective bargaining rights of Defendants' employees. *See* Finance Docket No. 30965 (May 12, 1987) (unpublished). Plaintiffs' first argument thus loses much of its

force in light of the ICC's contemporaneous consideration of this issue and the discretion vested in the ICC to "require the carrier to provide a fair arrangement" to employees whose interests are affected by the exempted transaction. 49 U.S.C. § 11347.

Second, the law of this Circuit is that Congress has expressly provided, through its enactment of section 11341, that transactions deemed to be in the public interest by the ICC override the rights and duties created by Congress in the RLA. Although Plaintiffs lose whatever their rights would be under the RLA, Plaintiffs have not lost all for they have a remedy—and are in fact concurrently pursuing it—compensation for the loss of their RLA rights. This remedy is provided by the ICC. Therefore, the forum for raising these arguments is the forum provided by that agency.

Finally, the breadth of the exemption contained in section 11347 also vitiates whatever force the remaining factual distinctions raised by Plaintiffs may have. Consequently, in accordance with the ruling of the First Circuit, the Court finds that it is without jurisdiction to consider claims ordinarily cognizable by this Court under the RLA where the alleged claims arise directly out of a lease transaction granted a statutory exemption by the ICC under the controlling statute. *Cf. Maine Cent. R.R. v. Brotherhood of Maintenance of Way Employees,* 652 F.Supp. 40, 42 (D.Me.1986) (finding that dispute concerning job protection benefits did not arise directly out of transaction approved by the ICC).

## IV.

Over the course of this labor dispute, the parties have been repeatedly successful in invoking the jurisdiction of this Court to enforce the mandates of the RLA. Defendants' goal in these proceedings has not been hidden; they have sought and continue to seek a streamlined work force and the implementation of their conception of a cost-efficient labor agreement. Defend-

franchises acquired through the transaction....

49 U.S.C. § 11341(a) (1982).

ants' efforts, however, have been remarkably unsuccessful, due in part to their failure to reach a meaningful agreement with the unions involved and in part to the almost interminable procedures of the RLA, procedures which have been upheld by various decisions of this Court and which have been supplemented by various actions of both Congress and the President. Nevertheless, Defendants have now apparently discovered an alternate method to achieve a similar goal. Although the Court has examined the record presented in this case and has considered with care the arguments raised by Plaintiffs, the Court finds that Plaintiffs have presented their request for relief to the wrong forum. The relief they request is available only from the ICC and not from this Court. Accordingly, the Court hereby *GRANTS* Defendants' Motion to Dismiss and *DENIES* Plaintiffs' Motion for Reconsideration, Injunctive Relief, and Stay.

So ORDERED.