**AIR LINE PILOTS ASSOCIATION, INTERNATIONAL**

**v.**

**EASTERN AIR LINES, INC., Appellant.**

**No. 88–7119.**

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 14, 1989.

Decided March 10, 1989.

On Motion to Withdraw Opinion April 4, 1989.

Joel M. Cohn, with whom John J. Gallagher, Charles L. Warren and T. Jay Thompson, Washington, D.C., were on the brief, for appellant. Robert A. McCullough also entered an appearance for appellant.

Jonathan A. Cohen, with whom James L. Linsey and Stephen Presser, New York City, were on the brief, for appellee.

Before ROBINSON, EDWARDS and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

This case arises out of a disagreement between Eastern Air Lines, Inc. ("Eastern" or "Airline") and the Air Line Pilots Association ("ALPA" or "Union") over the interpretation of the parties' collective bargaining agreement covering pilots flying for Eastern. In an attempt to prepare for a possible sympathy strike by its pilots, Eastern entered into a contract with Orion Lift Services, Inc. ("Orion"), whereby Orion agreed to train and supply pilots to operate Eastern flights in the event of a strike. ALPA sought a preliminary injunction in the District Court under the Railway Labor Act ("RLA"), claiming that the contract with Orion was a clear violation of the existing Eastern–ALPA collective bargaining agreement. The District Court agreed, found that the dispute was a "major" one under the RLA, and ruled that the Union was entitled to an injunction preserving the status quo. Eastern appealed.

Because we find that this case involves only a "minor dispute" over the interpretation of the collective bargaining agreement, the trial court had no jurisdiction to issue a status quo injunction. Rather, the Union was required to take its grievance to binding arbitration under the parties' collective agreement. Furthermore, we find that Eastern's interpretation of the agreement is not "so inherently unreasonable as to amount to bad faith," *Southern Railway Co. v. Brotherhood of Locomotive Firemen & Engineermen,* 384 F.2d 323, 327 (D.C.Cir.1967) (footnote omitted); therefore, we reject any suggestion that Eastern sought to "repudiate" the parties' agreement, thus causing a major dispute under the RLA. Accordingly, we reverse the judgment of the District Court and vacate the injunction.

## I. BACKGROUND

In late 1987, the collective bargaining agreement between Eastern and its mechanics union expired. In January 1988, anticipating a possible strike by the mechanics union and a sympathy strike by the pilots, Eastern entered into a strike contingency contract with Orion, an air carrier certified by the Federal Aviation Administration ("FAA").

The Eastern–Orion contract required Orion, *inter alia,* to hire and train pilots capable of flying Eastern aircraft and to supply flight crews to operate Eastern scheduled flights in the event of a strike. Eastern agreed to lease Eastern aircraft to Orion for training purposes. The aircraft were to be covered by Orion's FAA Certificate of Operations and maintained under Orion's FAA–approved maintenance program, and Orion was solely responsible for the operational control of the aircraft. The contract also required Eastern to pay for all training of Orion pilots. Although training under the contract would necessarily take place prior to any strike, Orion pilots would fly Eastern revenue routes only in the event of an actual strike.

In March 1988, after Eastern publicly disclosed the Orion contract, ALPA filed a complaint in the District Court. The Union claimed that pilot training by Orion violated section 1(B) of the Eastern–ALPA collective bargaining agreement ("Agreement"), which provides:

It is agreed that all present or future flying, including flight training (except for initial factory-conducted training in newly purchased equipment), revenue flying, ferry flights, charters and wet-leases performed in or for the service of

Eastern Air Lines, Inc., shall be performed by pilots whose names appear on the then-current Eastern Air Lines' System Seniority List.

Joint Appendix ("J.A.") 296. ALPA argued that Eastern had unilaterally changed the Agreement and thus had provoked a "major dispute," entitling the Union to a status quo injunction under section 6 of the RLA, 45 U.S.C. § 156 (1982), until the Airline either concluded a new agreement with ALPA or exhausted the RLA's collective bargaining procedures. Eastern countered that the District Court did not have jurisdiction to issue an injunction because the parties' disagreement was at most a "minor dispute" over the interpretation of the collective bargaining agreement.

The District Court agreed with the Union that the Agreement "is clear and unambiguous and can only be interpreted one way—prohibiting non-Eastern Orion pilots from conducting flight training on Eastern aircraft in or for the service of Eastern." *ALPA v. Eastern*, 683 F.Supp. 845, 853 (D.D.C.1988). The trial court found that Eastern had "failed to offer a reasonable interpretation of the contract which would justify its conduct," and that it had failed to prove "that this type of leasing arrangement is justified by past practices." *Id.* at 852. Accordingly, the court concluded that Eastern had triggered a major dispute under the RLA and that the Union was entitled to preliminary relief.[1] Eastern appealed.

## II. The Role of the Courts in Dealing with "Major" and "Minor" Disputes Under the RLA

The RLA establishes a dual framework for resolving disputes between airline management and employee representatives. A court's possible involvement in these disagreements depends on the type of dispute at issue. If the dispute is a "major" one—that is, a dispute over the formation of a collective bargaining agreement or efforts to change the terms of one, *Elgin, Joliet & E. Ry. Co. v. Burley*, 325 U.S. 711, 723, 65 S.Ct. 1282, 1290, 89 L.Ed. 1886 (1945), *adhered to on reh'g*, 327 U.S. 661, 66 S.Ct. 721, 90 L.Ed. 928 (1946); *Detroit & Toledo Shore Line R.R. Co. v. United Transp. Union*, 396 U.S. 142, 148, 90 S.Ct. 294, 298, 24 L.Ed.2d 325 (1969)—either party may ask the court to issue an injunction preserving the "status quo" while the parties pursue the RLA's "elaborate machinery for negotiation, mediation, voluntary arbitration, and conciliation." *Shore Line*, 396 U.S. at 148–49, 90 S.Ct. at 298–99. *See* 45 U.S.C. § 156; *ALPA v. Eastern*, 863 F.2d 891, 895 (D.C.Cir.1988). If, however, the dispute is a "minor" one—one that "contemplates the existence of a collective agreement" and "relates either to the meaning or proper application of a particular provision with reference to a specific situation or to an omitted case," *Elgin*, 325 U.S. at 723, 65 S.Ct. at 1290—the courts do not have jurisdiction to issue status quo injunctions. *See ALPA v. Eastern*, 863 F.2d at 895–96; *ALPA v. Northwest Airlines, Inc.*, 627 F.2d 272, 275 (D.C. Cir.1980). Rather, in seeking to resolve "minor" disputes, the parties must take their grievances to binding arbitration, *see* 45 U.S.C. § 184 (1982); *ALPA v. Eastern*, 863 F.2d at 895, and each is free to act under its interpretation of the collective bargaining agreement until the arbitrator rules otherwise,[2] *see, e.g., Burlington N.*

---

1. The District Court found that a showing of irreparable harm need not be satisfied before a court may grant a status quo injunction under the RLA. 683 F.Supp. at 849–50. The trial court also found that, even if the traditional criteria for preliminary injunctive relief did apply, ALPA had satisfied them. *Id.* at 850–51. In light of our finding that the dispute was a minor one and that the District Court therefore had no jurisdiction to enter the injunction, we need not address these issues.

2. There is one narrow exception to this rule: "even when a dispute has been found to be *minor*, a trial court may exercise equitable power to impose conditions requiring the employer to maintain the status quo, pending resolution of the dispute in arbitration." *ALPA v. Eastern*, 863 F.2d at 922 (Edwards, J., dissenting from the denial of rehearing *en banc*) (emphasis in original); *accord National Ry. Labor Conference v. International Ass'n of Machinists*, 830 F.2d 741, 749–50 (7th Cir.1987). This exception applies only when an injunction is necessary to preserve

*R.R. Co. v. United Transp. Co.*, 862 F.2d 1266, 1272 (7th Cir.1988); *Brotherhood of Locomotive Eng'rs v. Boston & Maine Corp.*, 788 F.2d 794, 797 n. 5 (1st Cir.), *cert. denied*, 479 U.S. 829, 107 S.Ct. 111, 93 L.Ed.2d 59 (1986).

The court's jurisdiction to issue a status quo injunction thus depends on whether the dispute is major or minor, which in turn depends on whether an existing agreement covers the subject in controversy. If "the dispute is arguably resolved by reference to the collective bargaining agreement," it is a minor dispute over which the courts have no jurisdiction. *Burlington*, 862 F.2d at 1272. In determining whether a dispute is major or minor under the RLA, "[t]he court does not consider the merits of the underlying dispute; its role is limited to determining whether the dispute can be characterized as involving the proper application or meaning of a contract provision." *Railway Labor Exec. Ass'n v. Norfolk & W. Ry. Co.*, 833 F.2d 700, 704 (7th Cir. 1987). If so, the dispute is a minor one that must be submitted to arbitration, *even if the court believes that one party's interpretation of the contract lacks merit.* Moreover, "if there is any doubt as to whether a dispute is major or minor a court will construe the dispute to be minor." *Railway Labor Exec. Ass'n*, 833 F.2d at 705; *accord International Bhd. of Elec. Workers v. Washington Terminal Co.*, 473 F.2d 1156, 1172–73 (D.C.Cir.1972), *cert. denied*, 411 U.S. 906, 93 S.Ct. 1530, 36 L.Ed. 2d 195 (1973).

### III. THE PRESUMPTION IN FAVOR OF ARBITRATION OF "MINOR" DISPUTES

There is a well established principle in labor law in this country that "[t]he function of the court is very limited" with respect to a dispute arising under a collective bargaining contract containing an agreement to arbitrate. *United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 567, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960). Normally, a court is confined to ascertaining whether the dispute

on its face is governed by the contract. Whether the [party seeking arbitration] is right or wrong is a question of contract interpretation for the arbitrator ... The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim. The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious. The processing of even frivolous claims may have therapeutic values of which those who are not a part of the plant environment may be quite unaware.

*Id.* at 568, 80 S.Ct. at 1346 (footnotes omitted).

The foregoing rule applies to disputes under the RLA. The RLA essentially supplies the arbitration clause, requiring arbitration of all minor disputes between air carriers and their employees concerning the interpretation or application of collective bargaining agreements. *See* 45 U.S.C. § 184; *Elgin*, 325 U.S. at 725–28, 65 S.Ct., at 1290–92. Accordingly, a court's view of the merits is irrelevant to the question whether a dispute under the RLA is a "minor" one that must be submitted to arbitration. The court's role is limited to asking only whether the dispute "on its face is governed by the contract," *American Mfg. Co.*, 363 U.S. at 568, 80 S.Ct. at 1346.

The court may "peek" at the merits of a party's contractual justification only when it is unclear whether there is an agreement or contractual provision that, when interpreted one way or the other, will resolve the dispute. This situation most commonly arises when the written contract is silent on the disputed issue, and the parties disagree over whether the contract encompasses implied agreements or unstated terms that govern the issue. *See, e.g., Burlington*, 862 F.2d 1266; *Brotherhood of Maintenance of Way Employees v. Chi-*

---

the arbitrator's ability to decide the dispute. *See id.* In the present case, however, the Union has

not claimed that it is entitled to a minor dispute injunction.

*cago & N.W. Transp. Co.*, 827 F.2d 330, 334 (8th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1291, 99 L.Ed.2d 502 (1988); *Chicago & N.W. Transp. Co. v. Railway Labor Exec. Ass'n*, 855 F.2d 1277, 1283–85 (7th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 493, 102 L.Ed.2d 529 (1988). In such a situation, the court may have to glance at the substance of the asserted contractual defense in order to determine whether the issue is arguably one of contract interpretation. Even then, however, there is a strong presumption that the dispute is minor:

> Where the parties disagree over whether the dispute can be resolved by reference to an agreement the dispute is minor unless the claims of contractual justification are "frivolous" or "obviously insubstantial."

*National Ry. Labor Conference*, 830 F.2d at 746 (quoting *Maine Central R.R. Co. v. United Transp. Union*, 787 F.2d 780, 783 (1st Cir.), *cert. denied*, 479 U.S. 848, 107 S.Ct. 169, 93 L.Ed.2d 107 (1986)); *accord Chicago & N.W. Transp. Co.*, 855 F.2d at 1285.

The presumption in favor of arbitration is particularly strong because a collective bargaining agreement may include not only the terms of the written contract but also "the common law of a particular industry or of a particular plant," *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 579, 80 S.Ct. 1347, 1351, 4 L.Ed.2d 1409 (1960); *accord ALPA v. Eastern*, 863 F.2d at 896–97. Construing the "common law of a particular industry" is a question of contract interpretation

within the expertise and authority of an arbitrator, not the court. *Cf. Warrior & Gulf*, 363 U.S. at 581, 80 S.Ct. at 1352 ("Apart from matters that the parties specifically exclude, all of the questions on which the parties disagree must therefore come within the scope of the grievance and arbitration provisions of the collective agreement."). Accordingly, few disputes that arise during the term of a collective bargaining agreement cannot arguably be resolved by reference to the agreement.

■ Moreover, if the court determines that the controversy arguably *can* be resolved by reference to the parties' collective bargaining agreement, the dispute is minor even if one party's contractual justification *is* frivolous. In other words, the question is whether the parties' agreement (including any arguably relevant implied terms, past practices or "common law of a particular industry") *arguably resolves* the dispute *one way or the other*, not whether the positions of the parties are *arguably justified*.[3]

## IV. Contract "Repudiation" Resulting in a "Major" Dispute

■ A dispute clearly governed by a provision in a collective bargaining agreement can be a major dispute only when it arises out of an attempt to *change* the agreement. Under the RLA, the terms of a collective bargaining agreement may not be changed by one side while the agreement is in force, unless the RLA's major

---

3. The District Court was apparently confused on this point. It found:

> A dispute is minor only if both of the [parties'] interpretations are predicated on the terms of the contract. Furthermore, it is for the courts not the parties to determine whether each of the parties['] interpretation of the terms is plausibly grounded in the language of the agreement.

683 F.Supp. at 852 n. 15. This statement is incorrect as a matter of law. The rule is that "'where the position of *one or both* of the parties is expressly and arguably predicated on the

terms of the agreement, as illuminated by longstanding practices, the question of whether the position is well taken involves a minor dispute.'" *International Bhd. of Elec. Workers*, 473 F.2d at 1172 (quoting *Switchmen's Union v. Southern Pacific Co.*, 398 F.2d 443, 447 (9th Cir.1968)) (emphasis added). If the dispute can arguably be resolved by interpreting or applying the terms of the contract, the fact that one party's interpretation is implausible does not change it into a major dispute unless, as discussed below, the party has repudiated the agreement.

dispute collective bargaining procedures are followed. *See* 45 U.S.C. § 152, Seventh (1982); *id.* § 156. Thus, if a party announces an intent to *repudiate* the agreement by adopting a unilateral change in the terms, it triggers a major dispute. *See, e.g., Southern Railway*, 384 F.2d at 327. Such a unilateral change provokes a major rather than a minor dispute for an obvious reason: if the party acknowledges that the existing agreement prohibits its actions, there is no disagreement over the meaning of the contract and therefore the dispute is not one of contract interpretation. Rather, a unilateral change in the agreement "look[s] to the acquisition of rights for the future, not to assertion of rights claimed to have vested in the past." *Elgin*, 325 U.S. at 723, 65 S.Ct. at 1290. Consequently, if a party repudiates the agreement and attempts to change its terms unilaterally, the dispute is a major one and a court has jurisdiction to grant an injunction preserving the status quo.[4] *See, e.g., International Bhd. of Elec. Workers*, 473 F.2d at 1171–72; *National Ry. Labor Conference*, 830 F.2d at 746–48.

It is, of course, unlikely that a party will announce outright that it intends to repudiate a standing agreement. Thus, the courts have recognized that, in extraordinary circumstances, an intent to "repudiate" an existing agreement may be inferred:

> "[A] controversy, although couched in terms of a disagreement as to interpretation of a contract, may under some circumstances be regarded as a major dispute. This result may be reached if it can be said that the change being imposed by one side on the other *is in nowise contemplated or arguably covered by the agreement*. The provisions of

the Railway Labor Act may not be avoided merely through the device of unilateral action which the actor purposefully intends shall not become a part of the agreement."

*International Bhd. of Elec. Workers*, 473 F.2d at 1172 (quoting *Switchmen's Union*, 398 F.2d at 447) (emphasis added by the *International Bhd.* court).

Even under this standard, however, repudiation is *not* to be equated with a simple violation—even a clear violation—of the contract. *See Southern Railway*, 384 F.2d at 327–28. In order to find that a contract violation amounts to a unilateral change in, or repudiation of, the collective bargaining agreement, a court must find not only that the agreement clearly prohibits the disputed conduct and that the party's contractual justification on its face is totally implausible, but also that the evidence "warrant[s] the inference that [the contractual defense] is raised with intent to circumvent the procedures prescribed by § 6 [of the RLA, 45 U.S.C. § 156,] for alteration of existing agreements." *Southern Railway*, 384 F.2d at 327; *accord National Ry. Labor Conference*, 830 F.2d at 746; *Maine Central R.R. Co.*, 787 F.2d at 783. That is, even if the court is absolutely convinced that the agreement prohibits the party's action, it may not infer that the party has repudiated the agreement, generating a major dispute, unless the court makes the "essential finding" that the party's proffered interpretation is "so inherently unreasonable as to amount to bad faith." *Southern Railway*, 384 F.2d at 327 (footnote omitted). To hold otherwise would allow the court to find a major dispute based solely on its view of the merits—usurping the role of the arbitrator in interpreting and applying the contract.[5] *See Maine Central R.R. Co.*, 787 F.2d at 783.

---

**4.** This is not to say, however, that a party that is bound by an existing collective bargaining agreement can force the other party to bargain over changes in the agreement when it otherwise has no duty to do so, simply by unilaterally repudiating the agreement and invoking the major dispute provisions of the RLA.

**5.** To the extent that some courts have appeared to find major disputes based solely on violations of the contract, we decline to follow them. The law in this circuit is that the court must also make the "essential finding" that the carriers' actions amount to bad faith. *Southern Railway*, 384 F.2d at 327.

## V. APPLICATION OF THE LAW TO THE FACTS OF THIS CASE

■ Turning to the present case, the question for this court is whether the dispute between Eastern and ALPA arises out of efforts to form or change a collective bargaining agreement, or whether the dispute relates to the proper meaning or application of an existing agreement. A review of the controversy quickly convinces us that this case presents an issue of contract interpretation, making it a minor dispute.

We first note that there is an existing agreement in force between Eastern and ALPA, and that neither party has avowed any attempt to change it. Moreover, the Eastern–ALPA Agreement contains an explicit provision governing the use of Union pilots for Eastern flight training, and both parties point to this provision to justify their positions with respect to the Orion contract. ALPA claims that section 1(B) of the Agreement prohibits Eastern from contracting with other carriers to train non-Eastern pilots for possible service during a strike, whereas Eastern contends that the Agreement does not prohibit strike preparation training conducted by another carrier. Thus, it is clear that interpretation of section 1(B) will resolve the dispute. In fact, neither party, nor the District Court, has even suggested otherwise.

Because all concerned *agree* that this dispute "is arguably resolved by reference to the collective bargaining agreement," *Burlington*, 862 F.2d at 1272, the case on its face presents a minor dispute that must be submitted to arbitration. Even if Eastern's interpretation of the contract were implausible, the fact would remain that application or interpretation of the contract will resolve the dispute, and the District Court therefore overstepped its bounds by allowing its view of the merits to influence its characterization of the dispute as major or minor. It is the role of the arbitrator, not the court, to choose between the parties' interpretations of the Agreement.

*See Maine Central R.R. Co.*, 787 F.2d at 782; *Brotherhood of Maintenance of Way Employees*, 827 F.2d at 333.

Because the fight over the flight training by Orion is clearly governed by an existing provision in the parties' Agreement, the case can present a major dispute only if ALPA is able to demonstrate that Eastern has repudiated the Agreement. Eastern has not renounced the Agreement outright, and thus ALPA must show that Eastern's interpretation of the disputed provision is "so utterly without substance as to warrant an inference of bad faith." *Southern Railway*, 384 F.2d at 328 n. 3. We conclude that the Union has not met this heavy burden.

The disputed contractual provision prohibits Eastern from using non-Union pilots to perform "all present or future flying, including flight training ... performed in or for the service of Eastern Air Lines, Inc." We find that the phrase "in or for the service of" is not free from ambiguity. For example, an arbitrator could conceivably conclude that, because the purpose of the Agreement is to protect Eastern pilots, it does not apply to training of pilots who will fly Eastern routes only if Eastern pilots refuse to come to work. Similarly, Eastern offers several examples of past practices to support its claim that all training that provides some benefit to the Airline is not necessarily "in or for the service of" Eastern within the meaning of the Agreement. While neither of these readings is necessarily compelled, we hold that Eastern's interpretation of the disputed provision is not so implausible that it leads us to conclude that the Airline is merely attempting to circumvent the major dispute provisions of the RLA.

Of course, we offer no view on the merits of Eastern's reading of the Agreement. It is precisely the job of the arbitrator to

interpret the disputed clause. If ALPA is to prevail on the merits, it must be pursuant to the judgment of an arbitrator.

### VI. CONCLUSION

This case involves a legitimate controversy over the proper interpretation of a provision in an existing collective bargaining agreement. This is a quintessential example of a minor dispute under the RLA. Accordingly, the District Court lacked jurisdiction to issue a status quo injunction under the RLA, and its decision is therefore reversed.

REVERSED.

Opinion for the Court filed PER CURIAM.[1]

### ON MOTION TO WITHDRAW OPINION

PER CURIAM:

Before the Court is a letter dated March 13, 1989, submitted by counsel for appellee Air Line Pilots Association. Counsel's letter advises that "Eastern Air Lines ... filed a petition for reorganization under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, on March 9, 1989 at 9:23 a.m.," and asserts that, "[p]ursuant to Section 362(a)(1) of the Bankruptcy Code, Eastern's chapter 11 petition automatically stayed all proceedings in this appeal on March 9th and thus precluded this court from issuing its March 10, 1989 decision reversing the district court." Upon consideration thereof it is

ORDERED, by the Court, that the Clerk file the aforesaid letter as Appellee's Motion to Withdraw the Court's Opinion of March 10, 1989, and upon consideration of that motion it is FURTHER ORDERED by the Court, that appellee's motion is denied.

Our decision in no way affects any "claim against the debtor," as contemplated by the Bankruptcy Code, 11 U.S.C. § 362(a)(1) (1984). Our judgment was that the District Court had no *jurisdiction* in the first place even to entertain appellee's suit. We did not decide anything on the merits regarding "claims" against the debtor; we only decided that the federal court had no role to play in the parties' dispute. The opinion holds only that the parties' dispute is a "minor" one under the Railway Labor Act that properly must be brought in arbitration. If the parties decide to pursue arbitration, this may be an "action or proceeding" that is subject to a stay under section 362(a)(1). To the extent that any other question may arise as to the effect of this Court's March 10, 1989 decision, that matter properly can be raised before the Bankruptcy Court.

In these circumstances, we can find no authority requiring this court to withdraw its opinion of March 10, 1989. Accordingly, appellee's motion is denied.

*So ordered.*

---

**1.** This opinion confirms an Order of the Court that was issued on March 22, 1989.