**NATIONAL RAILROAD PASSENGER CORPORATION, Plaintiff,**

v.

**UNITED TRANSPORTATION UNION, et al., Defendants.**

Civ. A. No. 93–1750.

United States District Court, District of Columbia.

Sept. 27, 1993.

Joanna L. Moorhead, Nat. R.R. Passenger Corp., Office of Gen. Counsel, Washington, DC, for plaintiff.

Clinton Joseph Miller, III, United Transp. Union, Cleveland, OH, for defendants.

### MEMORANDUM ORDER

STANLEY S. HARRIS, District Judge.

This case is before the Court on plaintiff's application for a preliminary injunction. With the agreement of the parties, the Court consolidated the hearing on the application for a preliminary injunction with a hearing on the merits pursuant to Fed.R.Civ.P. 65(a)(2). Upon consideration of the entire record, including the arguments of counsel at the hearing held on September 21, 1993, the Court grants plaintiff's request for a permanent injunction, and denies defendant's motion for a conditional injunction. The Court also denies plaintiff's motion for a preliminary injunction as moot.

### Background

The plaintiff, National Railroad Passenger Corporation, ("Amtrak"), an intercity railroad passenger service, was organized pursuant to the Rail Passenger Service Act of 1970, 45 U.S.C. § 501 *et seq.* Accordingly, labor disputes must be handled in accordance with the Railway Labor Act. 45 U.S.C. § 546(b). The defendant, United Transportation Union ("UTU"), is the recognized collective bargaining representative of Amtrak's passenger conductors and assistant passenger conductors ("conductors"), also referred to as passenger train service employees. On January 29, 1986, Amtrak and UTU executed a collective bargaining agreement governing rates of pay, hours of service, and working conditions for conductors in "off-corridor" operations.[1]

The underlying dispute in this case arises out of a disagreement between the parties regarding the performance of train car movement work at Metrolink, the commuter rail service in the Los Angeles, California, metropolitan area. Metrolink was opened in October 1992. Since its inception, Amtrak has assigned the maintenance and repair work at the Metrolink Central Storage and Mainte-

nance Facility ("Taylor Yard") to maintenance-of-equipment employees, who are not represented by UTU. In conjunction with performing various maintenance functions, the maintenance-of-equipment employees routinely move trains within the maintenance facility, switch cars, run cars through washers, spot the trains, and make up the train consists for passenger and nonpassenger operations. Declaration of Robert M. Burk, Assistant Vice–President and Chief Mechanical Officer for Amtrak ¶ 3; Defendant's Opposition Memorandum, at 2.

UTU first objected to this practice on June 17, 1993, on the grounds that the car movement work was the exclusive work of UTU-represented conductors under Rule 1 of the collective bargaining agreement. Rule 1 defines the scope of UTU's representation:

> This agreement will apply to the work or service of transporting passengers performed by the employees specified herein and governs rates of pay, hours of service and working conditions of all employees, as defined in this Rule, engaged in the performance of *work presently recognized as the exclusive work of passenger train service employees* on main lines, or branch lines or within yard facilities.

Rule 1, Collective Bargaining Agreement, January 29, 1986 (emphasis added). Amtrak responded that the contested work does not fall under Rule 1, and therefore, is not subject to UTU's jurisdiction. After subsequent discussions failed to resolve the dispute, UTU announced that it would commence a peaceful withdrawal of services nationwide, at 12:01 a.m., August 25, 1993. On August 24, 1993, Amtrak filed a complaint seeking a temporary restraining order, preliminary injunction, permanent injunction, and damages. Amtrak alleges that UTU has threatened to strike over a "minor dispute" under the Railway Labor Act and that such action violates the Act. This Court issued a temporary restraining order that same day, enjoining UTU from instigating, engaging in, or otherwise disrupting normal rail operations. The

---

1. One labor agreement covers the Northeast Corridor which runs between Washington, D.C., and Boston, Massachusetts. The "off-corridor" agreement covers operations that run through the rest of the United States.

parties stipulated that the Order shall remain in effect until the Court rules on the merits.

### Discussion

As noted, this case is governed by the Railway Labor Act. The Act establishes a dual framework for resolving disputes between a carrier and the employees' representative. In applying the Act, the Court must first determine whether the underlying controversy in this case constitutes a "major" or a "minor" dispute. *Elgin, Joliet & E. Ry. Co. v. Burley*, 325 U.S. 711, 723–25, 65 S.Ct. 1282, 1290–91, 89 L.Ed. 1886 (1945); *Air Line Pilots Ass'n. Int'l v. Eastern Air Lines, Inc.*, 869 F.2d 1518, 1520 (D.C.Cir.1989). This determination dictates the proper administrative procedures that the parties must adhere to for resolution of the dispute as well as this Court's authority to intervene in the controversy. *Air Line Pilots Ass'n*, 869 F.2d at 1520–21.

Major disputes relate to disputes over the formation of collective bargaining agreements or efforts to alter the terms of an existing agreement. *Consolidated Rail Corp. v. Railway Labor Executives' Ass'n*, 491 U.S. 299, 302, 109 S.Ct. 2477, 2480, 105 L.Ed.2d 250 (1989) ("*Conrail*") (citing *Burley*, 325 U.S. at 721–23, 65 S.Ct. at 1289–90). In the event of a major dispute, the Railway Labor Act requires the parties to undergo a lengthy process of bargaining and mediation, during which the parties must maintain the status quo. 45 U.S.C. §§ 155, 156; *Conrail*, 491 U.S. at 302, 109 S.Ct. at 2480. If no agreement has been reached after the parties have exhausted those procedures, the parties may resort to self-help. *Id.*

Minor disputes, on the other hand, relate to disputes over the interpretation or application of an existing agreement. *Id.* Minor disputes in the railroad industry are subject to mandatory arbitration before the National Railroad Adjustment Board or an adjustment board established by the employer and the union. 45 U.S.C. § 153; *Conrail*, 491 U.S. at 302–04, 109 S.Ct. at 2480–81. The Board's jurisdiction is exclusive; district courts lack jurisdiction to adjudicate the merits, and exercise only limited judicial review over the Board's arbitral decision. 45 U.S.C. § 153 First (q); *Conrail*, 491 U.S. at 304, 109 S.Ct. at 2481.

The distinction between a major and minor dispute is, to a certain extent, a matter of pleading, in that the party who initiates the dispute takes the first step towards categorizing it as an issue of alteration or interpretation of the agreement. *Id.* at 305, 109 S.Ct. at 2482. Therefore, an employer bears the relatively light burden of showing that its position is at least "arguably justified":

Where an employer asserts a contractual right to take the contested action, the ensuing dispute is minor if the action is arguably justified by the terms of the parties' collective bargaining agreement. Where, in contrast, the employer's claims are frivolous or obviously insubstantial, the dispute is major.

*Id.* at 305, 109 S.Ct. at 2482. There is a strong presumption in favor of finding the dispute to be "minor," and therefore subject to mandatory arbitration, because the collective bargaining agreement may include not only the terms of the written contract, but also the common law of a particular industry, a question of contract interpretation within the expertise and authority of an arbitrator. *Air Line Pilots Ass'n*, 869 F.2d at 1522.

Amtrak contends that the dispute over the contested work at Taylor Yard is a "minor" dispute because it involves an interpretation of the scope of UTU's work jurisdiction under Rule 1 of the agreement. Under Rule 1, work recognized as the exclusive work of the conductors as of January 29, 1986, the date of the agreement, is covered by the agreement. Amtrak argues that the practice of permitting non-UTU-represented employees to do train car movement work at several other Amtrak maintenance facilities supports its interpretation that the work was not the exclusive work of the conductors as of January 29, 1986.[2] Accordingly, argues

---

**2.** The Amtrak Director of Labor Relations, L.C. Hriczak, listed the following sites to support Amtrak's position that the contested work had not been performed exclusively by the conductors and assistant conductors:

Amtrak, it would not fall within the scope of Rule 1.

UTU argues that Amtrak's actions constitute a "major" dispute because the custom and practice, as of 1986, as attested to by UTU representatives primarily responsible for negotiating and interpreting the agreement, show that the contested work is clearly covered by Rule 1, and therefore, Amtrak's interpretation of the rule is "obviously insubstantial" and "not arguably justified." To the extent that train car movement work has been performed by non-UTU-represented employees, UTU contends that, depending on the site, the practice either violates Rule 1 or falls within Rule 38 of the agreement, which permits the movement of train cars by non-UTU-represented employees within a "confined area" reserved for servicing and repairing equipment under limited circumstances.

The Court finds that the dispute is minor in nature. The parties' relationship is governed and defined by an existing collective bargaining agreement. Rule 1 of the agreement, once defined, interpreted, and applied, will determine the validity of both parties' claims. Rule 1 does not specifically identify the work that belongs exclusively to the conductors, but rather identifies it by reference to work recognized as the exclusive work of the conductors as of January 29, 1986. Additionally, both parties have produced evidence that supports their interpretations of what was recognized in 1986 as the exclusive work of those employees. Therefore, Amtrak's reliance on Rule 1 to support the permissibility of its actions can hardly be said to be "obviously insubstantial." It is clear that the dispute in this case relates to the interpretation and application of an existing agreement.

As previously mentioned, minor disputes are subject to mandatory arbitration before the appropriate adjustment board, whose jurisdiction is exclusive. The district court does have the jurisdiction, however, to enjoin strikes arising out of minor disputes to preserve the jurisdiction of the adjustment board and to compel compliance with the procedures established by the Railway Labor Act.[3] *Brotherhood of R.R. Trainmen v. Chicago River & Indiana R.R. Co.*, 353 U.S. 30, 39–41, 77 S.Ct. 635, 640–41, 1 L.Ed.2d 622 (1957). Because UTU has threatened to strike over a minor dispute, issuance of a permanent injunction is appropriate in this case.

The findings made by the Court in its August 24, 1993, temporary restraining order remain true. Amtrak and the general public will suffer immediate, substantial, and irreparable injury if UTU engages in self-help in violation of the Railway Labor Act. The only way to prevent this occurrence is by an order continuing to enjoin such action. There is no adequate remedy available at law and injunctive relief must be granted. Accordingly, plaintiff's request for a permanent injunction is granted (subject, of course, to the conclusion of the appropriate arbitration proceeding). Fed.R.Civ.P. 65.

In the alternative, UTU moves for a conditional injunction. It argues that the Court, in its discretion, should condition any strike injunction issued on the return to the *status quo ante*, which UTU characterizes as the assignment of the contested work at Taylor Yard to the conductors.

While a minor dispute is in arbitration, each party is free to act under its interpretation of the collective bargaining

---

Maintenance employees perform work identical to that at Taylor Yard Maintenance Facility at locations such as Bear, Delaware; Albany, New York; and Saint Louis, Missouri in connection with Amtrak's intercity service and, at Boston, Massachusetts in connection with M.B.T.A. commuter operations. Similarly, Maintenance of Equipment employees handle all equipment movements at Amtrak's maintenance facility at Beach Grove, Indiana. Prior to the instant complaint, the UTU has not contested the performance of this work at any of these locations.

Letter from L.C. Hriczak, Director, Labor Relations, to A.L. Suozzo, General Chairman, UTU, August 13, 1993.

**3.** UTU asserts as a defense that the Court lacks subject matter jurisdiction by virtue of the Norris–LaGuardia Act, 29 U.S.C. § 101 *et seq.* The law is clear, however, that a federal court has jurisdiction to issue injunctive orders to enforce compliance with the requirements of the Railway Labor Act notwithstanding the provisions of the Norris–LaGuardia Act. *Chicago River & Indiana R.R. Co.*, 353 U.S. at 41, 77 S.Ct. at 641.

**12**

agreement. *Air Line Pilots Ass'n,* 869 F.2d at 1520. The trial court, however, has discretion to condition the grant of an injunction on a return to the *status quo* where an injunction is necessary to preserve the jurisdiction of the arbitrator. *Brotherhood of Locomotive Engineers v. Missouri–Kansas–Texas R.R. Co.,* 363 U.S. 528, 533, 80 S.Ct. 1326, 1330, 4 L.Ed.2d 1379 (1960); *Air Line Pilots Ass'n,* 869 F.2d at 1520–21 n. 2. The Court finds that a conditional injunction is not necessary under the circumstances presented here. First, the Court disagrees with UTU's characterization of the *status quo.* The contested work has been assigned to maintenance-of-equipment employees since Taylor Yard opened in October 1992. Therefore, the *status quo* is not the assignment of work to the conductors, but rather the assignment of work to maintenance-of-equipment employees. Second, a conditional injunction is not necessary to preserve the jurisdiction of the arbitrator.

Accordingly, it hereby is

ORDERED, that plaintiff's request for a permanent injunction is granted. The defendant labor organization, and the individual defendants, individually, and as officers or members or representatives of the conductors and assistant conductors employed by Amtrak, and each of them, their agents, successors, deputies, servants and employees, and all persons acting by, in concert with, through or under them, and each of them, or by or through their order, and all others acting in concert or in participation with them, be and they are hereby permanently enjoined from calling, permitting, instigating, authorizing, encouraging, participating in, approving of, or continuing any disruption of normal rail operations, including but not limited to strikes, picketing, slowdowns, concerted refusals to work, interference with equipment, sick-outs or other work stoppages, and all other acts in furtherance or in support thereof, in derogation of the procedures provided by the Railway Labor Act for the resolution of grievances with respect to the Metrolink work jurisdiction dispute. It hereby further is

ORDERED, that defendants' motion for a conditional injunction is denied. It hereby further is

ORDERED, that plaintiff's motion for a preliminary injunction is denied as moot.

SO ORDERED.