UNITED TRANSPORTATION
UNION, Plaintiff,

v.

NATIONAL RAILROAD PASSENGER
CORPORATION, Defendant.

Civil Action No. 97–0376(JR).

United States District Court,
District of Columbia.

March 11, 1997.

Clinton Miller, General Counsel, United Transportation Union, Cleveland, OH, Joseph Guerrieri, Jr., Guerrieri, Edmond & Clayman, Washington, DC, for Plaintiff.

Jonathan Saperstein, Assoc. General Counsel, National Railroad Passenger Corporation, Washington, DC, for Defendant.

### MEMORANDUM

ROBERTSON, District Judge.

Plaintiff United Transportation Union seeks a temporary restraining order and preliminary injunction against defendant National Railroad Passenger Corporation (Amtrak) for Amtrak's alleged violation of the status

quo provisions of the Railway Labor Act, 45 U.S.C. §§ 152, 155–56, by operating a demonstration train known as the Regio Sprinter without a conductor. A hearing was held on plaintiff's application for temporary restraining order the day this action was filed. At that hearing, the court suggested and the parties agreed that the application for temporary restraining order and the motion for preliminary injunction be consolidated into one motion and decided without further argument. Now, upon consideration of the briefs and the arguments of the parties, and for the reasons set forth below, it appears that the court lacks jurisdiction to grant the requested injunctive relief.

*Facts*

UTU is a labor union representing the crafts or classes of conductors and assistant conductors employed by Amtrak in the provision of inter-city and commuter passenger service throughout the United States. UTU and Amtrak are parties to various collective bargaining agreements covering those employees, including the collective bargaining agreement at issue in this case.

On October 23, 1995, in compliance with Section 6 of the RLA, 45 U.S.C. § 156, UTU filed a notice to change provisions in its current collective bargaining agreement with Amtrak. One of the proposed changes would require the assignment of additional assistant conductors to certain crew consists. On October 27, 1995, also pursuant to Section 6, Amtrak notified UTU that it wished to change the agreement so that Amtrak could determine staffing needs for conductors and assistant conductors at its discretion. The parties were unable to negotiate an agreement, and the dispute was referred to mediation pursuant to Section 5 of the RLA, 45 U.S.C. § 155, where it is currently pending.

In January 1997, Amtrak began operating the Regio Sprinter at various locations around the country on a demonstration basis. The Regio Sprinter consists of a single car. It is diesel powered, operates on light rails, and seats approximately 70 people. Siemens, the manufacturer of the Regio Sprinter, contracted with Amtrak and local transit authorities to operate the Regio Sprinter during the demonstration runs. The costs of the demonstration runs are borne principally by transit authorities. Although most rides have been offered free, local transit agencies in California sold commemorative tickets for $1 prior to boarding. Amtrak officers have crewed the train without the use of a conductor during all of the demonstration runs.

On January 17, 1997, UTU wrote a letter to Amtrak's Director of Labor Relations protesting the operation of the Regio Sprinter without a conductor on board. Amtrak responded, denying any obligation to assign a conductor to the Regio Sprinter. Amtrak continues to operate the Regio Sprinter without a conductor. Demonstrations are scheduled to run through April 1997.

*Analysis*

The threshold question in this case is one of jurisdiction, and the answer depends on whether the controversy presented is a "major" or "minor" dispute. *Elgin, Joliet & E. Ry. Co. v. Burley,* 325 U.S. 711, 723–25, 65 S.Ct. 1282, 1289–91, 89 L.Ed. 1886 (1945). If the dispute is "major," the court may issue an injunction to preserve the status quo while the parties undergo a mandatory period of bargaining and mediation. 45 U.S.C. § 155, 156; *Detroit and Toledo Shore Line R.R. v. UTU,* 396 U.S. 142, 90 S.Ct. 294, 24 L.Ed.2d 325 (1969). If it is minor, the parties are subject to mandatory arbitration before the National Railway Adjustment Board, and the court has no jurisdiction to issue a status quo injunction. *See Consolidated Rail Corp. v. Railway Labor Exec. Assn.,* 491 U.S. 299, 302, 109 S.Ct. 2477, 2480, 105 L.Ed.2d 250 (1989)("*Conrail*"); *Air Line Pilots Assn. v. Eastern Air Lines, Inc.,* 869 F.2d 1518, 1520 (D.C.Cir.1989).

The distinction between the two categories of disputes is well established. A major dispute relates to the formation of a collective bargaining agreement or efforts to alter the terms of an existing agreement. *Conrail,* 491 U.S. at 302, 109 S.Ct. at 2480. A minor dispute relates to interpretation or application of an existing agreement, one that may be conclusively resolved by looking to the agreement. *Id.* at 302–05, 109 S.Ct. at 2480–82. There is a strong presumption in favor of finding a dispute to be minor. *See*

*Air Line Pilots Assn.*, 869 F.2d at 1521 (if there is any doubt, the court should construe the dispute as minor). To establish that a dispute is minor, the employer need only show that the contested action is "arguably justified by the terms of the parties' collective bargaining agreement." *Conrail*, 491 U.S. at 307, 109 S.Ct. at 2483. An employer's claim must be "frivolous or obviously insubstantial" in order for the court to determine that a dispute is major. *Id.*

In this case, Amtrak contends that the dispute over the crew assignment on the Regio Springer is "minor" because it involves an interpretation of the scope of UTU's work jurisdiction under Rule 1 of the agreement. Rule 1 provides that conductors and assistant conductors have the right to work "presently recognized as the exclusive work of passenger train service employees on main lines or branch lines or within yard facilities." Amtrak takes the position that, since it has not operated light-rail service before, the scope clause arguably does not cover work connected with the Regio Sprinter.

Amtrak argues further that, even if the scope clause applies to light-rail service, no work is being performed in connection with the Regio Sprinter program that is recognized as the "exclusive work" of UTU-represented employees: no tickets are being collected and sold on board the Regio Sprinter trains, and no switching and classification work is being performed in the train yards. Amtrak argues still further, relying on the language in Rule 11 which provides that the minimum crew for one revenue passenger car is one conductor, that revenue service is a necessary precondition to the assignment of a conductor, and that Regio Sprinter is a demonstration project that is not generating revenue.

UTU argues that Amtrak's actions give rise to a "major" dispute as well as an attempt to "achieve by fiat" the result Amtrak is seeking in the ongoing arbitration. UTU dismisses Amtrak's light-rail distinction as insignificant, emphasizing that the Regio Sprinter transports passengers and arguing that Rule 1 requires nothing more. UTU also maintains that it has been Amtrak's practice to assign a conductor to a passenger train regardless of whether the conductor handles tickets, and thus that the work of conductor on the Regio Sprinter is within the scope of "exclusive work" performed by UTU-represented employees. UTU argues that the selling of $1 commemorative tickets is sufficient to qualify the Regio Sprinter as "revenue service" under Rule 11 and that, even if the $1 does not go to Amtrak, the revenue Amtrak receives from Siemens to operate the Regio Sprinter places the service within the requirements of Rule 11.

The court finds that Amtrak's position is "arguable" under the terms of the collective bargaining agreement and that the dispute is therefore "minor." Rule 1 does not specifically describe the scope of the work exclusively assigned to UTU-represented employees, but rather defines it as work "presently recognized" as exclusively within their province. Amtrak has never operated a light-rail service prior to this demonstration project. The question of whether that service falls within the scope of Rule 1 is open to interpretation, and Amtrak's position is not "frivolous or insubstantial."

Even if Amtrak's position under Rule 1 is without merit, its position may arguably be justified under Rule 11. The question of whether a demonstration project for which a limited number of commemorative tickets were sold constitutes "revenue service" is one that can be resolved by reference to the language in the agreement as well as past practices. Amtrak's position that the selling of commemorative tickets for a demonstration project does not qualify as revenue service is plausible under the language of Rule 11(d), which defines revenue service as one in which "seats or accommodations may be purchased by passengers."

Because the dispute that underlies this case is minor in nature, the court is without jurisdiction to issue a preliminary injunction maintaining the status quo. An appropriate order accompanies this memorandum.

### ORDER

Upon consideration of plaintiff's application for temporary restraining order and motion for preliminary injunction, defendant's

opposition, and the entire record, it is this 10th day of March, 1997,

**ORDERED** that plaintiff's application for temporary restraining order [# 2] is *denied.* It is

**FURTHER ORDERED** that plaintiff's motion for preliminary injunction [# 2] is *denied.* And it is

**FURTHER ORDERED** by the court *sua sponte* that the case is *dismissed* for want of jurisdiction.