ALLIED PILOTS ASSOCIATION,
Plaintiff,

v.

AMERICAN AIRLINES,
INC., Defendant.

. Civil Action No. 00–1256(JR).

United States District Court,
District of Columbia.

Aug. 22, 2000.

Edgar N. James, David P. Dean, James & Hoffman, P.C., Washington, DC, for Plaintiff.

Harry A. Risseto, Kathy B. Houlihan, Morgan, Lewis & Bockius LLP, Washington, DC, for Defendant.

## MEMORANDUM AND ORDER

ROBERTSON, District Judge.

Allied Pilots Association ("APA"), the certified bargaining representative of the pilots at American Airlines, moves for preliminary injunctive relief (1) enforcing an arbitration award with which American Airlines ("American") has allegedly refused to comply; (2) restoring the status quo under Section 2, Seventh of the Railway Labor Act ("RLA") in response to American's "unilateral imposition of a changed contract term"; and (3) enjoining American from "otherwise altering the rates of pay, rules, or working conditions of APA-represented employees without going through the mandated processes under Section 6 of the RLA." Pltf. Memorandum at 1. APA has failed to demonstrate that it is likely to succeed on the merits of its claim; or that, in the absence of a preliminary injunction, it will suffer irreparable injury; or that the issuance of a preliminary injunction would not substantially burden American. Its motion must accordingly be **denied.**

### FACTS

The underlying dispute in this action involves the number of hours per month for which American is entitled to schedule its pilots. The previous collective bargaining agreement between the parties provided that American could give a pilot on his or her last assignment of the month a trip that would result in exceeding the agreed 75–hour monthly maximum by up to five hours. This provision—known as Reas-

**2**

signment on Last Trip of the Month ("RALT")—was not included in the current collective bargaining agreement ("Agreement"), which took effect on May 5, 1997. American, contending that the RALT provision had been omitted by mutual mistake, continued after the effective date of the new Agreement to assign some pilots more than the monthly maximum flying times. A dispute arose about this practice. APA filed a grievance with the System Board of Adjustment ("Board"), which has jurisdiction over all disputes arising out of the Agreement and whose decisions are "final and binding upon the parties." APA's position was that the RALT provision had been exchanged for the higher monthly maximums (85 hours per month) that were built into the 1997 Agreement. On May 24, 1999, the Board issued a decision in APA's favor. The parties then agreed that American would have two months to change its scheduling practices to comply with the Board's decision. It is APA's contention in this action that American has continued its RALT scheduling practices past the expiration of that two-month grace period, in violation of the Agreement and the Board's decision.

American concedes that it has assigned pilots in excess of the established monthly maximums, but it contends that these assignments were "isolated, *de minimis* and inadvertent errors in the application of complex reassignment provisions in a collective bargaining agreement governing more than 10,000 pilots." Deft. Memorandum at 1.[1] American asserts that it has taken good-faith, proactive measures to correct scheduling errors, but it states that it cannot now or ever guarantee that such mistakes will not occur in the future, because of the inevitability of human error.

## ANALYSIS

A threshold question is whether or not the Court has jurisdiction of the dispute in this case. Under the RLA, minor disputes—disputes that relate to "the meaning or proper application of a particular provision with reference to a specific situation," *Elgin v. Burley*, 325 U.S. 711, 723, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945), and "may be conclusively resolved by interpreting the existing collective bargaining agreement," *Consolidated Rail Corp. v. Railway Labor Exec. Ass'n*, 491 U.S. 299, 305, 109 S.Ct. 2477, 105 L.Ed.2d 250 (1989)—are subject to exclusive and mandatory adjustment through arbitration and are beyond the jurisdiction of federal district courts. American contends that the instant dispute is a *minor* dispute that is outside the jurisdiction of the federal courts and not a major dispute as APA argues.

Federal courts do have jurisdiction of major disputes—"disputes over the formation of collective agreements or efforts to secure them. They arise where there is no such agreement or where it is sought to change the terms of one, and therefore the issue is not whether an existing agreement controls the controversy." *Burley*, 325 U.S. at 723, 65 S.Ct. 1282. APA's argument that American has effectively changed an existing Agreement term arguably makes the dispute in this case a "major" one, over which this Court does have jurisdiction.

■ The jurisdictional issue is not free from doubt, but we will nevertheless proceed, as if jurisdiction were established, to evaluate APA's motion in light of the established four-part test for the issuance of

---

1. American notes that "[o]ut of 12,857 domestic pilot reassignments made from December 1999 through May 2000, only 52 alleged crew scheduling errors have been reported or discovered," of which six were later determined not to be errors. Deft. Memorandum at 5. Moreover, upon closer inspection of those 46 crew scheduling errors, one finds that "only 23 involved assignments that would have been excused under the RALT language of the 1991 Agreement," *id.*, which means that "only 23 of the 10,429 downline domestic reassignments during the six month period could in any way be connected to the disputed RALT language of the 1991 Agreement, an error rate of less than 3/10 of one percent," *id.*

preliminary injunctions. To prevail on its motion, APA must demonstrate that (1) there is a substantial likelihood it will succeed on the merits; (2) it will be irreparably injured if an injunction is not granted; (3) an injunction will not cause substantial harm to American; and (4) the injunction will be in the public interest. *See Davenport v. International Bhd. of Teamsters,* 166 F.3d 356, 360–61 (D.C.Cir.1999).

## Likelihood of Success on the Merits

APA's first merits argument is that American is in violation of a final and binding decision of the Board. The violations appear at this stage of the record's development, however, only to be technical. There is no evidence of a refusal to comply with the award or of repudiation. Indeed, defendant appears to have made extensive and good-faith efforts to comply.

APA's second merits claim, that American has made a unilateral change in the term of the Agreement in violation of Section 2, Seventh of the RLA, misses the mark. American has offered no contractual justification for its action. *See Air Line Pilots Ass'n, International v. Eastern Air Lines,* 869 F.2d 1518, 1523 (D.C.Cir.1989) (emphasis added) ("In order to find that a contract violation amounts to a unilateral change in ... the collective bargaining agreement, a court must find not only that the agreement clearly prohibits the disputed conduct and that the party's *contractual justification* on its face is totally implausible, but also that the evidence 'warrant[s] the inference that [*the contractual defense*] is raised with intent to circumvent the procedures prescribed by § 6 [of the RLA], for alteration of existing agreements'"). American's justification is that it is not humanly possible to ensure mistake-free compliance in a complex system of scheduling more than 10,000 pilots each day. That justification is not implausible on its face. In

the absence of record evidence tending to show an intent on American's part to circumvent the procedures set forth in § 6 for changing the terms of an existing agreement,[2] APA is unlikely to succeed on the merits.

## Irreparable Injury

APA'S theory of irreparable injury is that leaving American free to continue its alleged RALT scheduling practice in violation of the Agreement exposes "APA's apparent inability to enforce contractual rights," thus "undercut[ting] pilot good will toward the Union," upon which goodwill APA depends "for continued financial and volunteer support." Pltf. Memorandum at 13. Not only is that theory attenuated to the point nearly of abstraction, but it is without support in the record. Indeed, as American asserts without contradiction from APA, "APA has represented its pilots vigorously and effectively in identifying and remedying the implementation glitches since the Award.... With APA's assistance, problems have been identified quickly, mutually acceptable remedies have been implemented and the frequency of errors has dropped to one in May 2000, and none so far in June 2000." Deft. Memorandum at 13. Nor does APA dispute American's assertion that "[i]n the isolated instances in which crew scheduling errors have occurred, the individual pilots have received extra-contractual remedies in the form of premium pay and/or pay protection for flights dropped from their schedule in the month following the error." *Id.* (citing La Morte Decl., paras. 78–80).

## Balancing of Harms

APA argues that "any small harm to American caused by the loss of passenger goodwill through canceled flights at the end of the month is outweighed by the clear merit of the APA's claims." That assertion is rejected, particularly inasmuch

---

2. Plaintiff does not plead a violation of Section 2, Seventh or Section 6 of the RLA, which set forth procedures for changing rates

of pay, rules, and working conditions of collective bargaining agreements.

**4**

as APA has made no showing of any realistic injury to itself for the continuation of the status quo.

*Public Interest*

Both sides invoke a version of the truism that "peaceful settlement of labor controversies under the RLA is a matter of public concern," *see Virginian Ry. v. System Fed'n No. 40,* 300 U.S. 515, 552, 57 S.Ct. 592, 81 L.Ed. 789 (1937). Neither side derives advantage from the point.

\* \* \* \* \* \*

Upon consideration of plaintiff's motion for a preliminary injunction, it is this _____ day of August 2000,

**ORDERED** that the motion is **denied.**